THE BANK OF THE UNITED STATES APPELLANTS V. JAMES DANIEL
ET AL. APPELLEES.

A bill of exchange was drawn at Lexington, Kentucky, on James Daniel, on
the 12th of October, 1818, by Robert Griffing, payable at one hundred and twenty
days after date, at the bank of deposit of New Orleans. The bill was accepted
by the drawee, and was endorsed by H. D., I. C. and S. H. All the parties to the
bill resided in Kentucky. The bill was discounted by the Branch Bank of the
United States in Kentucky, and was transmitted to New Orleans for payment. It
was there regularly protested for non-payment, and was returned to Kentucky for
payment of principal and interest, from the 9th of February, 1819, the time it fell
due, together with charges of protest, and ten per cent. damages on the principal.
The maker and acceptor of the bill paid the bank, in July, 1819, three thousand
three hundred and thirty dollars and sixty-seven cents, on account of the aggregate
amount due, and supposed to be due, and gave a promissory note for eight thou-
sand dollars, the balance, to William Armstrong, to which H. D., I. C. and S. H.
were parties, as co-drawers. or endorsers. This note was disc anted at the office
of discount of the Bank of the United States at Lexington, Kentucky, upon the
express agreement, that the proceeds should be applied to the payment of the
balance due on the bill. Afterwards a payment of five hundred dollars was made
on this note, and a note for seven thousand five hundred dollars given, which not
being paid, and Griffing having died, suit was brought by the bank on the note,
and a judgment obtained against all the other parties to it. In 1827, the defendants
in the judgment at law, filed their bill in the circuit court of Kentucky, claiming,
that by the law of Kentucky, the bank was not entitled to ten per cent. damages
on the bill, as all the parties to it lived in Kentucky; and that, therefore, the amount
of the damages, one thousand dollars, had been included by mistake, in the note
for eight thousand dollars; and as there was no legal liability for damages, the
note, to the amount of the damages, was given without any consideration what-
ever. The bill prayed for an injunction to stay proceedings on the judgment,
to the amount of the damages, and the interest on the same. In 1827, that amount
was one thousand five hundred and fifteen dollars. A decree of the circuit court
of Kentucky, allowed the injunction at November term, 1836, and the amount of
the damages and interest, from July, 1819, which the three thousand three hun-
dred and thirty dollars sixty-seven cents included and was paid in that sum, was at
the time of the decree of the circuit court, two thousand and forty dollars.

The act of congress provides, that appeals shall be allowed to the Supreme Court,
from the final decrees rendered in the circuit courts, in cases of equity jurisdic-
tion; where the matter in dispute, exclusive of costs, shall exceed the sum or value
of two thousand dollars. The expression, sum or value of the matter in dispute,
has reference to the date of the decree below, alike in case of appeals in equity,
and writs of error at law: they are each grounded on the original process of this
Court, operating on the final decree or judgment; and are limited to the sum or
value then in controversy, and of which the decree or judgment furnishes the bet-
ter evidence, should it furnish any. The matter in dispute in the circuit court,
was a claim to have deducted from the judgment at law, one thousand dollars,
with interest thereon, after the rate of six per centum, from the 8th day of July,
1819, up to the date of the decree, in November 1836; being upwards of seventeen

[Bank of the United States v. Daniel et al.]

years: and the circuit court decreed the reformation to be made of the judgment at law, by expunging therefrom, and as of its date, the one thousand dollars, with the interest. The effect was to cut off the interest that had accrued on the one thousand dollars, from the date of the judgment in 1827, to that of the decree, in 1836; interest on the principal sum recovered, being an incident of the contract by the laws of Kentucky, as well after judgment as before. The practical consequence of the decree will immediately be manifest when the bill is dismissed by the order of this Court; the appellants will then issue their execution at law, and enforce the one thousand dollars, with the accruing interest, from the 8th of July, 1819, until payment is made. It follows, that upon the most favourable basis of calculation, and disregarding the statute of Kentucky of 1789, giving ten per cent. damages in addition to legal interest on the sum enjoined, the amount to which the decree below relieved the appellees, and deprived the bank of the right of re-covery, was two thousand and forty dollars; that is, one thousand dollars principal, with seventeen years and four months of interest: this being the aggregate amount in dispute, and enjoined by the decree, of course, the Supreme Court has jurisdiction of the writ of error.

This Court, in accordance to a steady course of decision for many years, feels it to be an incumbent duty, carefully to examine and ascertain if there be a settled construction by the state courts of the statutes of the respective states, where they are exclusively in force; and to abide by, and follow such construction when found to be settled.

A bill of exchange drawn, accepted, and endorsed by citizens of Kentucky, and there negotiated, payable at New Orleans; was not, by force of the statute of Kentucky of 1798, subject to the payment of ten per cent. damages.

Whether a bill of exchange, drawn in one state of this Union, payable in another, is a foreign bill; involves political considerations of some delicacy, although of no intrinsic difficulty, at this day. The respective states are sovereign within their own limits, and foreign to each other, regarding them as local governments; and consequently foreign to each other, in regard to the regulation of contracts: it follows, a bill drawn in one, payable in the other, is a foreign bill.

The place of payment of the bill, on which the suit was brought in the circuit court, being within a jurisdiction foreign to Kentucky, subjected the acceptor to the performance of the contract, according to the laws of Louisiana, where it was payable, to every extent he would have been, had he become a party to the bill at New Orleans; and the effect of the contract, on all the parties to it, does not vary from the one sued on in Buckner v. Finley and Van Lear, 2 Peters, 586. Being a foreign bill, and not having been affected by the statute of Kentucky, of course, the holders, by commercial usage, were entitled to re-exchange when the protest for non-payment was made.

Courts of chancery will not relieve for mere mistakes of law. This rule is well established, and the Court will only repeat what was said in the case of Hunt v. Rousmanier, 1 Peters, 15, "that whatever exceptions there may be to the rule, they will be found few in number, and to have something peculiar in their character, and to involve other elements of decision."

Courts of equity are no more exempt from obedience to statutes of limitations, than courts of common law.

It is generally true, that the giving a note for a pre-existing debt, does not discharge the original cause of action; unless it is agreed that the note shall be taken in payment.

The statute of limitations is a bar in a case where, at the time of the return of a bill

of exchange, payable in New Orleans, and drawn in Kentucky, protested for non-payment, the parties to it, in 1819, paid as damages, on the bill, ten per centum on the amount; and did not until 1827 claim that, by the law of Kentucky, no damages were payable on such a bill. In 1819, the parties to the bill paid three thousand three hundred and thirty dollars and sixty-seven cents, on account of the bill for ten thousand dollars, the cost of protest, and damages; and gave their note for eight thousand dollars, for the balance of the bill, which was discounted, and the proceeds, by express agreement, applied to the payment of the bill. If no damages were payable on the bill for ten thousand dollars, an action to recover back the same, as included in the payment of the three thousand three hundred and thirty dollars and sixty-seven cents, could have been instituted in 1829.

AN appeal from the circuit court of the United States for the district of Kentucky.

On the 29th day of October, 1827, the appellees, James Daniel, Henry Daniel, Isaac Cunningham and Samuel Hanson, filed a bill in the circuit court of Kentucky, stating, that on the 12th of October, 1818, at Lexington, Kentucky, Robert Griffing, since dead, drew a bill of exchange on James Daniel, one of the complainants, for ten thousand dollars, payable one hundred and twenty days after date, at the office of discount and deposite of the Bank of the United States at New Orleans. The bill was drawn in favour of Henry Daniel, Isaac Cunningham and Samuel Hanson, and being accepted by James Daniel, was endorsed to the Bank of the United States by the drawees. At the time the bill was drawn, Robert Griffing and James Daniel lived and were in the state of Kentucky; and all the parties to the bill, were, at the time it was drawn, and ever since have continued to be residents in that state.

The bill of exchange, so drawn and endorsed, was, by the Bank of the United States, transmitted to New Orleans, and not being paid, was regularly protested and returned to Kentucky; the holders claiming the amount of the same from the parties to the bill, with damages, at the rate of ten per cent. on the amount. James Daniel, the acceptor of the bill, believing the demand of damages to be legal, paid to the Bank of the United States, in June or July, 1819, three thousand three hundred and thirty dollars and sixty-seven cents, on account of the whole amount due on the bill, consisting of principal, interest, charges and the damages; and for the balance of the bill, the drawers of the bill, Robert Griffing and James Daniel, gave their negotiable note, payable sixty days after date, with Cunningham, Hanson and Henry Daniel, as co-drawers in favour of William Armstrong, which note was discounted by the bank, and the proceeds, by

express agreement, were appropriated to the payment of the balance due on the bill of exchange. The sum of three thousand three hundred and thirty dollars and sixty-seven cents, and the note for eight thousand dollars, were delivered to the bank at the same time; and all the complainants, except James Daniel, were only sureties for the payment of the note, having become co-drawers of the same for that purpose only. In August, 1820, Griffing and the complainants, gave another note to the Bank of the United States, for seven thousand five hundred dollars, Griffing and James Daniel having paid five hundred dollars on account of the first note; and the note for seven thousand five hundred dollars having become due and protested, a suit has been instituted on it and a judgment obtained, on the law side of the circuit court of the United States for the Kentucky district.

The bill states, that the Bank of the United States are not entitled to damages on the bill of exchange payable at New Orleans, inasmuch as all the parties to it resided in the state of Kentucky, at the date and maturity thereof; and, therefore, so much of the note for eight thousand dollars, as includes the ten per cent. on the bill, amounting to one thousand five hundred and fifteen dollars, ought to be deducted from the judgment; and the bill therefore prays, that the defendant may be restrained by an injunction from collecting the said sum of one thousand five hundred and fifteen dollars, part of the judgment; and at a final hearing on the bill, the injunction may be made perpetual.

The circuit court, in November, 1827, granted an injunction, according to the prayer of the bill, until further order. The defendants, in May, 1836, having proceeded to answer the bill, stated, that one thousand dollars, being ten per cent. on the bill for ten thousand dollars, had been allowed, as damages, on the return of the bill from New Orleans, with a full knowledge of all the facts of the case, and of all the principles of law on which the same was claimed. The respondents do not admit that this was done under a clear mistake of the law; indeed, two of the complainants were lawyers of celebrity, and deservedly of high rank; and no ignorance of the law can be imputed to them. The respondents allege, that their claim to damages is within the provisions of the statute of Kentucky; and, if not so, they are entitled to damages to the amount, for the allowed non-payment of the draft at New Orleans; and they resist the claim to set aside the allowance of damages fairly and voluntarily made by the complainants.

The respondents also say, that all the grounds of equity, alleged in the bill, occurred to the complainants more than five years next before the commencement of the suit, and are barred by lapse of time; and they further allege, that the damages were liquidated, assented to, and discharged, more than five years next before the commencement of this suit: and all claim to relief, on account of the same, is, therefore, barred by the statute of limitation.

The cause came on for a final hearing in November, 1836, and the circuit court decreed, that the plaintiffs be perpetually enjoined from taking out execution for the sum of one thousand dollars, the amount of damages charged on the bill, with the interest charged on the said sum of one thousand dollars, up to the time of the judgment. The defendants appealed from this decree.

The case was submitted to the court on printed arguments, by Mr. R. Wickliffe and Mr. Johnson, for the appellants; and by Mr. Ousley, Mr. Turner and Mr. Allen, for the defendants.

For the appellants, it was contended, in the argument of their counsel, that the decree of the circuit court was erroneous, on the following grounds:

1. Because the complainants were liable to ten per cent. damages, under the statute of Kentucky.

2. They were liable to damages, under the law merchant, independently of that statute.

3. Their agreement, upon a full knowledge of all the facts, to pay these damages, is binding; and they cannot be relieved, on account of their mistake of law.

In 1819, when the agreement was made to pay the damages, the statute of Kentucky had not received a judicial construction. Two decisions have since been given upon it; but, at that time, the parties were left to their own interpretation, with such light as the words, the spirit, and the object of the statute afforded. This interpretation, the complainants contend, is shown to be erroneous by these subsequent decisions. In the question of mistake, we conceive it proper that this Court should look to the same lights the parties themselves had, and refuse relief, unless it shall appear they did in truth commit an error. The question is not, what the courts have since decided, but whether the parties, in 1819, mistook the law, when they believed this bill bore damages. Were it purely a question of the construction

of a Kentucky statute, we admit the Kentucky decision, however erroneous, would be followed. But the question is one of mistake, and no decision can have such retrospective power as to convert what was once truth into falsehood. It would be as mischievous as an ex post facto law, to permit a subsequent decision to overturn the fair compromises and contracts of individuals, made under a different and a *correct* view of law. If there was mistake, the mistake was committed in 1819. If right to relief exists, it existed as early as 1819. Now, if the Court regards these subsequent decisions as conclusive, then they will in substance decide, that, although no mistake existed when the contract was made, and at that time the agreement was fair and binding; yet some two years afterwards, a Kentucky decision created a mistake, and annulled a previous contract that was legal and valid. Under our constitution, no statute can have such a power of dissolving the obligation of contracts, and certainly a decision cannot go higher. We believe, then, we may safely conclude, that the complainants cannot show a mistake as early as 1819; or, in other words, must show it by the true construction of the statute itself, giving to these decisions the weight they deserve, and no more.

The statute is in these words, viz:

"If any person or persons shall draw any bill or bills of exchange, upon any person or persons out of this state, on any other person or persons within any other of the United States of North America, and the same being returned back unpaid, with legal protest, the drawer thereof, and all others concerned, shall pay the contents of the said bill, together with legal interest from the time said bill was protested, the charges of protest, and ten pounds per cent. advance for the damages thereof, and so proportionably for greater or smaller sums."

The complainants contend, that, as James Daniel, the drawee, was a citizen and resident of Kentucky, at the drawing and negotiating of the bill, it did not come within the statute, and make them liable to damages.

The bill was payable out of Kentucky, and there was no designation on the bill of the residence of James Daniel, other than that of the place of payment. These circumstances, we contend, bring it within the meaning of the statute, and we regard James Daniel as drawn upon, at the place where the bill was payable; which place, being out of Kentucky, brings it to this, that he was drawn on out of that state. It will be observed that the statute does not make the damages depend upon the residence of the drawee: and it has been decided in

Kentucky that the residence is immaterial. If it neither depends upon the residence nor place of payment, the question of damages, under this statute, must be determined by the mere casual locality of the drawee, as in or out of Kentucky, at the time of drawing the bill. The locality of individuals in the West is extremely transitory, and difficult of being exactly known at any given time. If the damages be made to turn upon that fact, it would frequently happen that damages would be incurred when none were expected by either party. For instance, a bill might be drawn upon an individual supposed to be in Louisville or Maysville, who happened, however, at the time, to be across the Ohio river, and of course out of the state of Kentucky; or it might be drawn payable in Kentucky, and the drawee out of the state: in both these cases, the bill would bear ten per cent. damages. Yet the parties could not have contemplated such a result; nor would the cases come within the mischief the statute was intended to remedy. Such a construction, then, leads too far; it involves us in absurdities. There is a wide difference between the actual locality of an individual and the locality given to him by the bill of exchange. The former is a matter entirely immaterial, so far as the bill of exchange is concerned; it has nothing to do with the damages sustained by the holder, on the non-payment of the bill. With the latter, it is otherwise. Had the courts of Kentucky duly considered this distinction; had they attended to the mercantile language of this statute, and the mischiefs it was intended to remedy, instead of looking to its bare letter and grammar; we believe no difficulty would have arisen in its construction.

Where no place of payment is designated in the bill of exchange, it is presentable for acceptance and payment at the residence of the drawee. Such a bill is drawn on the drawee at his residence; and, if that be out of Kentucky, the bill is, both in letter and spirit, within the statute. Here the actual locality of the drawee is unimportant; the bill fixes his locality at his residence, by its being the place for acceptance and payment. When a place of payment is fixed by the bill, both the actual residence and locality of the drawee become immaterial; the bill fixes his locality at the place of payment, and there alone is he to be sought. It becomes the place of presentment for acceptance and payment; and the drawer and endorsers contract, by the bill, that the drawee shall there be found for all the purposes of the bill. In the language of merchants, the drawee is drawn upon at that place; and, if the place be out of the state, he is drawn upon out of

the state, and comes within the statute. Cited Wood v. The Farmers and Mechanics Bank of Lexington, 7 Monroe, 284; Clay v. Hopkins, 3 Marshall, 488.

2. The bank claims these damages independently of the Kentucky statute.

It cannot be denied that this bill comes within the spirit, if, indeed, it be out of the letter of. the statute. This was conceded in the case of Clay v. Hopkins. As we have before remarked, these statutory damages were given not as a penalty, but as compensation for real injury and loss sustained by the holder, from the non-payment of the bill at the place stipulated; and came in lieu of the damages given by the law merchant, in the form of re-exchange, commission, and expenses. It is presumable the legislature fixed a reasonable rate of compensation; and it would not be too much to say, the damages more frequently were below than above the real injury and loss. Now, it surely cannot be illegal for the parties to agree between themselves the amount of compensation for this injury; nor contrary to law to fix that amount at the same that the law has fixed for exactly similar injuries. In this case, the place of payment was at the extreme limit of the United States; and the injury the greatest that could occur under the statute. The complainants seem to have forgotten entirely the law merchant, and not to have remembered that there was real loss to be compensated. Under these circumstances, we conceive the standard fixed by law cannot be against law: and an agreement in pursuance of it, is, upon valuable consideration, fair and binding.

3. Their agreement, upon a full knowledge of all the facts, to pay these damages, is binding; and they cannot be relieved on account of their mistake of law. How far a mistake of law will invalidate a contract, and form a ground of relief in chancery, has never been very clearly settled. In Mr. Story's Commentaries on Equity, vol. i. 121 to 154, will be found an able and full discussion of the question. The English and American decisions are collated and examined, and the views of the civilians adverted to. The result of his researches and examinations was, that a mistake or ignorance of law, forms no ground of relief from contracts fairly entered into, with a full knowledge of all the facts. There may be some exceptions, but the cases are few, and generally stand upon some urgent pressure of circumstances. The same doctrine is expressed by the Supreme Court of the United States, in the case of Hunt v. Rousmanier, 1 Peters, 1 to 15, where the Court remarks: "We hold the general rule to be, that a mistake

of this character (a mistake of law) is not a ground for reforming a deed founded on such mistake; and, whatever exceptions there may be to the rule, they will be found few in number, and to have something peculiar in their character."

The few cases which form exceptions to the rule, will usually be found to contain some other ingredient than mere mistake or ignorance; such as surprise, undue influence, or oppression: and where such ingredient is wanting, the mistake has been one of a plain, well-settled principle of law. Mr. Story well remarks, that it is difficult to define what are plain, acknowledged principles of law, and what will constitute a doubtful question. Yet it may be considered that a claim founded on a doubtful or doubted question of law, forms a good consideration for any contract concerning that claim; and that such a contract, if otherwise unobjectionable, will be upheld.

Now, of all the questions and difficulties which the law presents, there is none of more admitted uncertainty than the construction of statutes. It is often impossible for the best lawyer, upon the calmest and most attentive investigation, to determine the extent to which judicial construction will carry them. Sometimes they are limited by the letter, at others extended by the spirit. For example: look to the statute of frauds and perjuries; and to the statute of limitations. They are plain and simple in their language; yet it has cost millions to give them a judicial construction. And when books had been written upon them, and the British courts had exhausted their learning and refinement, one or two Kentucky decisions destroyed, in that state, the whole, or almost the whole fabric of their judicial construction. We presume, however, it must be conceded that the construction of this statute was at least a doubtful question of law. Of that there is abundant evidence in the opinion of the Chief justice of Kentucky, and in the legislative construction of the act. At this time, were the question raised in the Kentucky courts, we believe it more than probable the opinion of the chief justice would be considered law. Even there, at this time, it may be considered more than doubtful whether any mistake has been committed.

But we do not consider this a case of ordinary mistake of a point of law. The agreement was in exact accordance with the general understanding of the law at the time it was made. Nine-tenths of the legal men in Kentucky would have pronounced the construction given by the parties correct. Two years afterwards, the court of appeals, in another case, gave a different construction. The commu-

nity would be in a miserable condition, if, at every change of opinion upon questions of law, all their previous contracts and settlements were to be overturned. Men could never know the end of their controversies, were such a rule to prevail. Upon this subject, the remarks of Chancellor Kent, whose decisions are almost reverenced throughout the Union, are so pertinent and just, that we could not do better than make a short extract from them:—" A subsequent decision of a higher court, in a different case, giving a different exposition to a point of law from the one declared and known, when a settlement between parties takes place, cannot have a retrospective effect, and overturn such settlement. The courts do not undertake to relieve parties from their acts and deeds fairly done, on a full knowledge of facts, though under a mistake of law. Every man is to be charged at his peril with a knowledge of the law. There is no other principle which is safe and practicable, in the common intercourse of mankind. And to permit a subsequent judicial decision in any one case on a point of law to open and annul every thing that has been done in other cases of a like kind, for years before, under a different understanding of the law, would lead to the most mischievious consequences. Fortunately for the peace and happiness of mankind, no such pernicious precedent is to be found. The case is, therefore, to be decided according to the existing state of things, when the settlement in question took place." See Lyon v. Richmond, 2 John. Chan. Rep. 60.

Had the opinion been delivered in this very case, it could not have been more directly applicable. This case is not cited, because there are but few on the same point, but to show that it is the understanding of the law prevailing at the time of the settlement or contract, even though it may have been erroneous, which is to govern; and that the subsequent settlement of a question of law, by judicial decisions, does not create a mistake of law which courts will ever rectify.

As this Court is governed by correct chancery law, and not the decisions of the Kentucky courts; it would almost seem needless, after the thorough and able examination contained in Story's Commentaries above referred to, to cite further authorities. Yet it will be found that the Kentucky decisions, on this point, are in accordance with the principles laid down by Mr. Story.

In the case of Patterson, &c. v. Hughes, &c., 2 Marshall, 331, it

[Bank of the United States v. Daniel et al.]

is laid down that a mistake of law, with a full knowledge of the facts, is no ground of relief.

In the case of Taylor v. Patrick, 1 Bibb, 168, it is held, that if the parties to a compromise understand the facts correctly, erroneous deductions of law from those facts by a party, would not be ground for the setting aside the settlement induced by those deductions.

In .Tennessee, the same doctrine, as to mistakes of law, was established in the case of Lewis v. Cooper, Cooke, 467. In Virginia, it was established in the case of Brown v. Armstead, 6 Rand. 594.

In a late case in Kentucky, (not yet reported,) the court held that relief for mistakes of law could only be granted under the following circumstances: 1st, The mistake must be of a plain, well-settled principle of law; and 2d, The mistake must go to the whole consideration of the agreement; or, in other words, there must be no other consideration than the mistaken legal liability. · If this case be law, of which there may be some doubt, it still settles the question against the complainants in this case. There was no plain, well-settled principle of law which was mistaken. Nor did the mistake, if any, go to the whole consideration. Besides the doubtfulness of the claim, which is a valuable consideration; see Taylor v. Patrick, 1 Bibb, 168; also, 2 Bibb, 450; 6 Monroe, 91; there was also the liability of complainants to damages by the law merchant, about which there could be no mistake.

On the subject of consideration, it was held by the Supreme Court of the United States, in the case of Thornton v. Wynn, 12 Wheat. 183; 4 Cond. Rep. 508, that if an endorser of a bill who had been discharged from liability, by the laches of the holder in giving him notice, with a full knowledge of the facts, promises to pay the bill, his promise binds him. Here there was no legal liability, but perhaps a moral one, to save the holder from loss. In our case there was a legal and moral liability to compensate his loss.

We contend the claim to relief is barred by lapse of time, although the statutes of limitations do not, in express terms, apply to suits in chancery; yet it is a well settled rule, that equity will follow them, and not decree relief when, in similar cases, the statutes would have barred at law. Could, then, a suit have been brought at law; and if so, what length of time would have barred?

From the allegations of the complainants, it appears this bill of exchange, with the damages due upon it, were *paid off*, and the bill

surrendered up in 1819. It is said *paid off*, because, by their own showing, it so appears. They did not pay part, and give their note for the balance; but they obtained a discount of a note executed to one Mr. Armstrong, and with the proceeds of the discount paid off the whole balance of the bill. By discount, we understand a purchase, so that this Armstrong's note was sold or assigned to the bank, and with the price they received for it the bill was paid. Now, if this be true, the parties could have brought an action of assumpsit against the bank for money paid to it by mistake. This action accrued in 1819; and this suit was not brought until 1827, more than eight years after the right to relief accrued: for all actions of assumpsit in Kentucky, the limitation is five years. That, by the indulgence of the bank, this note was not paid off, is neither a legal, equitable, nor moral answer to the statute. It began to run from the time the settlement took place, and the mistake, if any, happened. Then the right accrued, if it ever did. Perhaps, however, it may be said that the limitation should only run from the time of discovering the mistake. Admit it. The court of appeals gave their construction to the statute in 1821, six years before suit was brought.

It is alleged, also, that there was an express agreement, by which the proceeds of the discount were to be applied to the payment of the bill. This agreement certainly does not prevent its being a payment. That it was agreed to be a payment, rather confirms than weakens the position that the bill was paid.

On the subject of the jurisdiction of this Court, we would further remark, that the decree directs a thousand dollars, with interest, from the time of allowing damages to the date of the judgment, to be credited on the judgment. This judgment bore interest, as appears by the complainants' bill. The time of allowing damages was July, 1819, as appears by the bill, and the agreed facts. So that interest was compounded at the date of the judgment, which was erroneous. It should merely have been simple interest on the one thousand dollars to the date of the decree. This latter mode of entering the decree would exceed two thousand dollars at the date of the decree; and the amount is increased by the compounding mode adopted by the court.

For the appellees, it was stated, that the case is one over which this Court has no jurisdiction, and that the appeal should therefore be dismissed. The only matter in contest between the parties is the

claim of the bank for ten per cent. damages on the amount of the protested bill. If the bank be not entitled to those damages, and it was correct in the circuit court to relieve the complainants against that amount; it was doubtless proper also to enjoin the bank from the collection of the interest which has accrued thereon. But that interest is incidental to, and forms no part of, the matter in contest; and ought not to be taken into computation in estimating the value of the subject in dispute. The damages claimed are less than two thousand dollars.

But should this Court entertain jurisdiction of the case, it is respectfully insisted, on the part of the complainants, that there is no error in the decree.

In reviewing the decree, and deciding on the matters in contest, the Court will doubtless be governed by the law of Kentucky, as judicially expounded by the supreme court of that state. Such is understood to be the acknowledged principle on which this Court acts, in cases depending on the laws of a particular state. 5 Cranch, 22, 32; 1 Wheat. 279; 10 Wheat. 119; 11 Wheat. 301. And as the bill was drawn, accepted, and endorsed in Kentucky, by persons then residing and living in that State, their liability for damages, on the return of the bill, and the right of the bank to demand damages, must depend on the particular laws of Kentucky. Story's Conflict of Laws, 261–2.

Under the law of Kentucky, the complainants were not liable to damages. There was, at the time the bill was drawn and accepted, in force in Kentucky, a statute containing the following provisions: " If any person or persons shall draw or endorse any bill or bills of exchange, upon any person or persons out of this state, on any other person or persons within any other of the United States of North America, and the same being returned back unpaid, with legal protest, the drawer thereof, and all others concerned, shall pay the contents of said bill, together with legal interest from the time said bill was protested, the charges of protest, and ten per centum advance for the damages thereof, and so proportionably for a greater or smaller sum." 1 Littell's Laws of Kentucky, 178; and 2 Littell's Laws of Kentucky, 103.

If not liable to damages under the statute, the complainants cannot be liable by the law merchant, independently of the statute. It was competent to the legislature of Kentucky to regulate the liability of parties to bills of exchange, drawn, accepted, and endorsed within

the limits of the state. This was done by the acts referred to, passed in 1793 and 1798; and, consequently, no principle of the law merchant, incompatible with the provisions of those laws, if any such there be, can prevail. These laws, when examined, will be found, by necessary implication, if not by express words, to exclude the law merchant from any influence on questions as to damages on bills of exchange.

But, according to the law merchant, the complainants were not liable to any damages on this bill. The law of re-exchange is understood to be applicable to foreign bills only, or to such as are drawn by a person residing in a foreign country, on some one in this country; or vice versa: and not to bills drawn in the United States, upon any one in any other of the United States. The statute of Kentucky clearly discriminates between the two classes of bills, and recognises the former, and not the latter, as foreign bills: and in the case of Cresson v. Williamson, &c., 1 Marshall's Rep. 454, it was held by the supreme court of Kentucky, that a bill drawn in Kentucky on merchants at Philadelphia, was not a foreign bill. The same principle was held by the supreme court of New York, in the case of Miller v. Hackley. The character of the bill is not, however, conceived to be material in the present case; for it is evident that, in liquidating the damages, the parties acted on the supposition that the bill was embraced by the act of 1798 of Kentucky; and the damages were included in the note, not on account of any supposed liability in the complainants for re-exchange upon the general principles of the law merchant; but under the mistaken belief that they were liable under the act for ten per centum damages on the amount of the bill. If such was not the understanding and intention of the parties, it is strange that they should have included in the note damages to the exact amount of ten per cent.; when it is not, and cannot be pretended, that the exchange between Kentucky and New Orleans was at the time any thing like that amount.

If then the complainants were not liable to the ten per centum damages on the return of the bill, have they imposed on themselves a liability from which they cannot be relieved by the after execution of the notes to the bank? If, instead of including in the note the balance which remained unpaid of the bill as well as the damages, the damages only had been included; there could, it is conceived, be no serious doubt on the subject. The note would then have been founded on no sufficient consideration; and under the laws

.of Kentucky, authorizing defendants by special plea to go into and impeach the consideration, the complainants might have defeated a recovery at law. The case of Ralston and Sebastian v. Bullits, 3 Bibb, 262, decided by the supreme court of Kentucky, would be decisive in such a case. In that case it was decided, that a bond given by an endorser of a bill for the amount, after he was discharged of his liability, by the neglect of the holder to give notice, might be avoided by plea, impeaching the consideration. In the opinion delivered in that case, the court, after showing that the maker of the note was at the time it was executed discharged from liability to pay the bill for which the note was given, make use of the following remarks, viz: " If, therefore, the defendants were wholly discharged from any responsibility for want of due notice of the non-acceptance of the bill, the bond given for the payment of the amount of the bill was without consideration. A promise to pay in such a case, is held not to be binding. Blesard v. Hurst, 5 Burr. 2670; Kydd, 119. Nor would the circumstance that the promise was reduced to writing, make any difference; for a written, no more than a verbal promise, is binding, if made without consideration: and the act of 1801, 2 Littell's Laws of Kentucky, 442, having authorized the defendant in an action upon a bond or other writing under seal, by special plea, to impeach or go into the consideration, in the same manner as if such writing had not been sealed, it evidently follows that the bond on which suit is brought, is in this respect placed upon the same footing as a verbal or written promise, and consequently not binding on the defendant." Since that case was decided, many others of like character have been brought before the courts of Kentucky; and in no one instance has the correctness of the principle on which it turned been doubted, or its authority departed from. It has now become the settled and inflexible rule by which like cases are decided in that state, and should be sanctioned by this Court; so far, at least, as respects cases depending on the laws of Kentucky.

But the note is not for the damages only; it includes the amount unpaid of the bill as well as the ten per centum damages. The note cannot, therefore, with propriety, be said to be without consideration. The liability which the complainants were under to pay the sum remaining unpaid on the bill, was a sufficient consideration for any promise or note which they might make for that amount. As to that amount, therefore, there was an adequate consideration for the note executed by the complainants. But their liability in that

respect formed no sufficient consideration for any note or promise which they might make for the ten per centum damages on the amount of the bill; and as to that amount contained in the note, it was as clearly voluntary and without consideration as if contained in a separate note. It was not, however, competent for the complainants, by plea at law, to draw in question the right of the bank to the damages; as they might have done, if nothing but the damages had been contained in the note. Such a defence would have gone to part of the consideration of the note, only; and is clearly inadmissible under the act of 1801, of Kentucky, as judicially expounded and settled by many cases in the supreme court of that state. 1 Bibb's R. 500; 4 Bibb, 277; 1 Marsh. 168; 5 Monroe, 274; 1 J. J. Marsh. 489. It does not, however, follow that, because they could not defend at law, the complainants are without redress. Their case is one proper for the aid of a court of equity, to which they have applied for relief.

The appellants contend that the claim of appellees to relief was barred by the lapse of time, and the statute of limitations.

On the contrary, we suppose that neither lapse of time nor the statute of limitations apply to the case, or bar the right to relief.

In the first place, to make out their case, the appellants assume the fact, that the payment made in 1819 on the bill of exchange, was first applied to the discharge of the damages claimed by the bank, and the remainder to the bill, and the new note given for the residue of the bill; whereas there is neither allegation nor proof that this was the case.

The same remark applies to the assumption, that the mistake of want of liability for the damages was discovered more than five years before this suit was instituted.

But suppose that in each particular the facts of the case bore out the counsel of the bank in their assumption, still, lapse of time nor the statute of limitations does not cut off the right to relief. That right in equity attached to the new note when given, and has followed the debt ever since as a living equity, against enforcing its collection to the extent of a mistake. To that extent there was no consideration for the note.

Suppose a note is given without any consideration at all, is the party who gives it bound to file his bill in five years after its date, and pray that it may be cancelled; or may he wait until there is an attempt to enforce it, and then assert his equity? Does not the

equity against the obligation subsist as long as the legal right to enforce it? If it does when it applies to the whole demand, does it not when it applies to a part?

If a partial payment had been made eighteen years on an obligation, and not credited, can it be contended that because the obligee has waited that long and now sues, that the obligor is barred from setting up the payment? The same may be asked if the whole debt had been paid?

Now, in equity, that which was paid in 1819, was a credit on the whole debt; and if it were not all applied, a court of equity will treat the subject matter as if it had been applied, and will restrain the obligee from collecting the part paid and not credited.

If, in 1819, Daniel and others had paid the bank one thousand dollars, in extra or usurious interest on the debt in controversy, and a new note had then been given for the residue of the debt, which the bank was now attempting to coerce; would not a court of equity apply the one thousand dollars as a credit to the debt and legal interest due in 1819, and treat it as a payment made on the same at that time? This is a familiar instance of the application of the principle contended for. Equity disregards forms, and marches directly forward to the justice of the case: it considers that as actually done which in good conscience should have been done: it does not apply the credit now, but considers it as applied in 1819. Hence neither lapse of time nor the statute of limitations apply to the case.

Mr. Justice CATRON delivered the opinion of the Court.

To a just comprehension of the legal questions arising in this cause, it becomes necessary that the facts be stated, in the form and sense they present themselves to the Court.

The first transaction giving rise to the controversy, was a bill of exchange, in the following words:

"Exchange for 10,000 dollars.

"Lexington, October 12th, 1818.

"One hundred and twenty days after date, of this my first of exchange, second and third of same tenor and date unpaid, pay Henry Daniel, or order, ten thousand dollars, at the office of discount and deposite of the Bank of the United States, in New Orleans, for value received of him; which, charge to the account of yours, &c.

"ROBT. GRIFFING.

"To Mr. JAMES DANIEL."

[Bank of the United States v. Daniel et al.]

James Daniel duly accepted the bill; and it was endorsed by Henry Daniel, Isaac Cunningham, and Samuel Hanson, to the president, directors, and company of the Bank of the United States.

When it was made and accepted, the drawer, Griffing, and James Daniel, the acceptor, resided and were in Kentucky, where the transaction took place. The endorsers, Henry Daniel, Cunningham and Hanson, also resided there.

The bill was transmitted to New Orleans for payment; but, not being paid, it was regularly protested and returned; and the bank looked to the drawer, acceptor, and endorsers, for the payment of principal and interest thereon, from the 9th February, 1819, the time it fell due, together with charges of protest, and ten per centum damages on the principal. Griffing, the maker, and James Daniel, the acceptor, believing the claim for damages to be legal, paid the bank, July, 1819, the sum of three thousand three hundred and thirty dollars and sixty-seven cents, on account of the aggregate amount due and supposed to be due; and, for the balance, Griffing and James Daniel executed their negotiable note for eight thousand dollars, payable sixty days after date, to William Armstrong; to which, Cunningham, Hanson, and Henry Daniel were parties, either as co-drawers or endorsers; and which was discounted by the office of discount of the Bank of the United States, at Lexington, for the benefit of Griffing and James Daniel, upon the express agreement between the parties making and endorsing the note with the bank, that the proceeds should be applied to the *payment* of the balance due on the bill.

Griffing and James Daniel were the principal debtors, and Cunningham, Hanson, and Henry Daniel, sureties. The principals paid five hundred dollars, in part discharge of the note; and, in August, 1820, Griffing, James Daniel, Henry Daniel, Cunningham, and Hanson, executed their joint note to the bank, for seven thousand five hundred dollars, payable sixty days after date, for the balance. Griffing having died, and the note for seven thousand five hundred dollars not having been discharged, when due, the bank sued James Daniel, Cunningham, Henry Daniel, and Hanson, in the circuit court of the United States, for the district of Kentucky, and recovered a judgment at law, for the principal and interest; at what time does not precisely appear.

In 1827, the defendants to the judgment at law, filed their bill in equity, in the same court; and, after setting out the facts substantially, as above, further alleged—" they were advised the bank was not

Vol. XII.—G

entitled to ten per centum damages, on said protested bill of exchange, inasmuch as the drawer and acceptor thereof both lived in Kentucky, at the date and maturity of said bill; and that, therefore, so much of said eight thousand dollar note, as exceeds the balance due on said bill, for principal, interest, and damages, (after deducting said payment of three thousand, three hundred and thirty dollars, sixty-seven cents,) was included in said note *by mistake;* as to the legal liability of said Griffing and James Daniel, for said ten per cent. damages, and as to said excess, said note was executed without any consideration whatever."

The complainants also alleged, that the failure of consideration, on which the note for seven thousand five hundred dollars was grounded, being partial; relief against the excess, in the note and judgment, could only be had in a court of equity; and prayed the bank might be restrained, by injunction, from the collection of one thousand five hundred and fifteen dollars, the excess that entered into the judgment, because of the mistake.

At the November term, 1827, an injunction was ordered by the court, restraining the bank from proceeding to collect one thousand five hundred and fifteen dollars, part of the judgment, until the hearing.

The bank answered, admitting the statements of the complainants in reference to the liquidation of the bill of exchange, and the part payment and renewal of the eight thousand dollar note; and further averred, that, on the return of the protested bill, the sum of one thousand dollars, being ten per cent. on the amount thereof, was claimed by the respondents as their damages; and the claim was assented to by the complainants, with a full knowledge of the facts upon which it was founded, and all the principles of law upon which it was asserted: and, in pursuance of such assent, the amount of said bill, with interest, and the one thousand dollars damages, was liquidated and discharged by complainants, in manner alleged: but aver, respondents cannot admit "this was done under any mistake, either as to fact or law: indeed, two of complainants were lawyers of celebrity, and of deservedly high rank; and respondents cannot impute to them ignorance of the law: and ignorance of the facts is not pretended."

The respondents further alleged, that, by a statute of Kentucky, bills of exchange drawn by a person in that state, on another out of the state, when returned protested, bore ten per cent. damages, besides interest: and, independently of the statute, the bill for ten

thousand dollars was subject to damages for re-exchange and ex-penses: that the effect of the statute was to reduce to uniformity and certainty, the amount to which the holders were entitled, in consequence of the money not being paid at the place agreed upon, and the loss arising from difference of exchange and expenses. It is insisted the claim for damages comes within the statute; yet, if not within it, that respondents are entitled to equal damages with those given by the statute, their risk and loss being the same.

In bar of the claim, the respondents say that all the grounds of equity alleged in the bill, accrued to complainants more than five years next before the commencement of the suit, and are barred by the lapse of time; they further allege that the damages were liquidated, assented to, and discharged, more than five years next before the commencement of the suit; and all claim to relief is barred by the statute of limitations.

The allegations in the complainants' bill, not responded to, are admitted. To which answer, a general replication was filed. The only evidence in the cause was, an agreement of facts entered into by the parties, to wit: "It is agreed that the statements contained in said bill, as to liquidation of the bill of exchange, of ten thousand dollars, are true. It is also agreed that this liquidation was on the 8th day of July, 1819, and that no interest was charged up to that time, except upon ten thousand dollars. It is also admitted that such renewals of the eight thousand dollar note were made, as are stated in said bill; and that the judgment at law was on one of the notes given in renewal."

Upon the pleadings and admissions, the court proceeded to a hearing of the cause at the November term, 1836, and decreed: "That a credit be entered on the judgment at law, obtained by the defendants against the plaintiffs, as set forth in the bill for one thousand dollars, the amount of damages charged on the protested bill, with all interest charged on said sum up to the time of the judgment; and that the defendants be perpetually enjoined from taking out execution on said judgment, for the sum thus decreed to be credited; but the decree not to affect the balance of the judgment.

From which decree, the president, directors and company of the Bank of the United States, appealed to this Court.

The first question raised on the facts, and in advance of the merits is, whether the matter in controversy in the circuit court, was of sufficient dignity to give this Court jurisdiction by appeal.

The act of congress provides, that appeals shall be allowed to the Supreme Court, from final decrees rendered in the circuit courts, in cases of equity jurisdiction, where the matter in dispute, exclusive of costs, shall exceed the sum or value of two thousand dollars. The expression, sum or value of the matter in dispute, has reference to the date of the decree below, alike in case of appeals in equity, and writs of error at law: they are each grounded on the original process of this Court, operating on the final decree or judgment, and are limited to the sum or value then in controversy, and of which the decree or judgment furnishes the better evidence, should it furnish any. The matter in dispute below, was a claim to have deducted from the judgment at law, one thousand dollars, with interest thereon, after the rate of six per centum, from the 8th of July, 1819, up to the date of the decree, in November 1836; being upwards of seventeen years: and the circuit court decreed the reformation to be made of the judgment at law, by expunging therefrom, and as of its date, the one thousand dollars, with the interest. The effect was to cut off the interest that had accrued on the one thousand dollars, from the date of the judgment in 1827, to that of the decree, in 1836; interest on the principal sum recovered, being an incident of the contract by the laws of Kentucky, as well after judgment as before. The practical consequence of the decree will immediately be manifest when the bill is dismissed by the order of this Court; the appellants will then issue their execution at law, and enforce the one thousand dollars, with the accruing interest, from the 8th of July, 1819, until payment is made: it follows, that upon the most favourable basis of calculation, and disregarding the statute of Kentucky of 1789, giving ten per cent. damages in addition to legal interest on sums enjoined, the amount to which the decree below relieved the appellees, and deprived the bank of the right of recovery, was two thousand and forty dollars; that is, one thor·· and dollars principal, with seventeen years and four months of interest: this being the aggregate amount in dispute, and enjoined by the decree, of course, the Supreme Court has jurisdiction.

The second question raised by the record, rests mainly on the pleadings in the cause. It is alleged the bank was not entitled to ten per cent. damages on the protested bill, inasmuch as the drawer and acceptor both resided in Kentucky; that the eight thousand dollar note included the damages of one thousand dollars, through mistake; and so far it wanted consideration.

The defendants deny this was done through either mistake of the fact or law; insist they were entitled to ten per cent. damages by the statute of Kentucky: but if the statute did not apply, they were entitled to damages, for re-exchange, and charges: and that the statute was justly referred to for the rule settling the measure of compensation.

As no mistake of the facts is positively alleged, and if impliedly stated, is directly and positively denied, we must take it no such mistake existed; and such is manifestly the truth.. In regard to the mistake of law, however, the pleadings can settle nothing; they make an issue, and refer it to the Court for decision, on the local and general laws governing damages on bills of exchange of the character of the one set forth.

The statute, by force of which the bank claimed damages, declares: " If any person or persons, shall draw or endorse any bill or bills of exchange upon any person or persons, out of this state, on any person or persons, within any other of the United States, of North America, and the same being returned back unpaid, with legal protest, the drawer thereof, and all others concerned, shall pay the contents of said bill, together with legal interest from the time said bill was protested, the charges of protest, and ten pounds per cent. advance for the damages thereof; and so proportionably for greater or smaller sums."

In 1821, the court of appeals of Kentucky, gave a construction to their statute, in the case of Clay v. Hopkins, 3 Marshall, 488, where it was holden, that where the drawer and acceptor were both of Kentucky, and the transaction took place there, the statute did not apply, although the bill was made payable in Baltimore. That and this case are alike in all their features.

In a subsequent cause of Wood v. The Farmers and Mechanics' Bank of Lexington, 7 Monroe, 284, the same court held, that a bill addressed to " Mr. J. J. Wood, New Orleans," was within the statute, and drew after it ten per cent. damages on protest; distinguishing Wood's case from that of Clay and Hopkins, because the acceptor was addressed at the foot of the bill as of New Orleans, although in fact he was of Kentucky.

This Court, in accordance to a steady course of decision for many years, feels it to be an incumbent duty carefully to examine and ascertain if there be a settled construction by the state courts of the statutes of the respective states, where they are exclusively in force;

[Bank of the United States v. Daniel et al.]

and to abide by, and follow such construction, when found to be settled.

Looking to the two adjudications in Kentucky, on the construction of the statute of 1798, in the spirit of the rule we have laid down for our government; and without any reference to the misgivings we may entertain of the correctness of the construction, declared to be the true one in Hopkins and Clay, we have come to the conclusion, that Wood's case did not overrule the former. It is therefore declared, by this Court, that the bill of exchange, for ten thousand dollars, drawn by Robert Griffing, although payable at a bank in New Orleans, did not, by force of the statute of Kentucky, subject the drawer or others bound to take it up, to the payment of ten per cent. damages.

Not having been entitled by the statute, the appellants insist they were authorized to charge damages by commercial usage, and that the statute prescribed a fair measure.

The assumption, that the holder could lawfully demand damages, depends on the fact, whether the bill was foreign or inland; if foreign, then the bank had the right to redraw from New Orleans to Lexington, for such amounts as would make good the face of the bill, including principal, re-exchange and charges, with legal interest: the law does not insist upon actual redrawing; but the holder may recover the price of a new bill at the place of protest. Had a jury been called on to assess the amount due, proof of the exchange against Lexington, would have been necessary, to the recovery of damages, on the ground of re-exchange; but the parties themselves having liquidated them, at the rate the statute of Kentucky allowed, in cases very similar, we must presume, at this distant day, aside from any proof to the contrary, that ten per cent. was fair compensation: it may have been less; of this, however, the parties were the proper judges. Kent's Com. Lecture 44.

Whether a bill of exchange, drawn in one state of this Union, payable in another, is a foreign bill, involves political considerations of some delicacy, although, we apprehend, of no intrinsic difficulty, at this day. The respective states are sovereign within their own limits, and foreign to each other, regarding them as local governments. 2 Peters, 586. Kentucky and Louisiana, as political communities, being distinct and sovereign, and consequently foreign to each other in regard to the regulation of contracts, it follows, a bill drawn in one, payable in the other, is a foreign bill: and so this Court adjudged in the cause of Buckner v. Finley and Van Lear

2 Peters, 586. The bill, in that case, was drawn at Baltimore, by citizens of Maryland, on Stephen Dever, at New Orleans; whereas, the one in this case, was drawn and accepted in Kentucky, but payable at a bank in New Orleans. Yet, we think, the place of payment, being within a jurisdiction foreign to Kentucky, subjected the acceptor, James Daniel, to the performance of the contract, according to the laws of Louisiana, to every extent he would have been, had he became a party to the bill at New Orleans; and that the effect of the contract, on all the parties to it, does not vary from the one sued on in Buckner v. Finley and Van Lear, 2 Peters, 586. Story's Conflict of Laws, sect. from 281 to 286. Being a foregn bill, and not having been affected by the statute of Kentucky, of course, the holders, by commercial usage, were entitled to re-exchange when the protest for non-payment was made: and those bound to take it up having paid, or agreed to pay the damages, with a full knowledge of the facts, and a presumed knowledge of the law, voluntarily giving the bank a legal advantage, it would be going far for a court of chancery to take it away: the equities of the parties being equal, to say the least, it cannot be against conscience for the appellants to retain their judgment.

The main question on which relief was sought by the bill; that on which the decree below proceeded, and on which the appellees relied in this Court for its affirmance; is, can a court of chancery relieve against a mistake of law? In its examination, we will take it for granted, the parties who took up the bill for ten thousand dollars, included the damages of a thousand dollars in the eight thousand dollar note; and did so, believing the statute of Kentucky secured the penalty to the bank; and that, in the construction of the statute, the appellees were mistaken. Vexed as the question formerly was, and delicate as it now is, from the confusion in which numerous and conflicting decisions have involved it; no discussion of cases can be gone into without hazarding the introduction of exceptions that will be likely to sap the direct principle we intend to apply: indeed, the remedial power claimed by courts of chancery to relieve against mistakes of law, is a doctrine rather grounded upon exceptions, than upon established rules. To this course of adjudication we are unwilling to yield. That mere mistakes of law are not remediable, is well established, as was declared by this Court in Hunt v. Rousmanier, 1 Peters, 15; and we can only repeat what was there said, "that whatever exceptions there may be to the rule, they will be found few in

number, and to have something peculiar in their character," and to involve other elements of decision. 1 Story's Ch. 129.

What is this case; and does it turn upon any peculiarity? Griffing sold a bill to the United States Bank, at Lexington, for ten thousand dollars, endorsed by three of the complainants, and accepted by the other, payable at New Orleans; the acceptor, J. D., was present in Kentucky, when the bill was made, and there accepted it; at maturity it was protested for nonpayment, and returned. The debtors applied to take it up; when the creditors claimed ten per cent. damages, by force of the statute of Kentucky. All the parties bound to pay the bill were perfectly aware of the facts; at least the principals, who transacted the business, had the statute before them, or were familiar with it, as we must presume; they and the bank earnestly believing, (as in all probability most others believed at the time,) that the ten per cent. damages were due by force of the statute, and influenced by this opinion of the law, the eight thousand dollar note was executed, including the one thousand dollars claimed for damages. Such is the case stated and supposed to exist by the complainants, stripped of all other considerations standing in the way of relief.

Testing the case by the principle, " that a mistake or ignorance of the law, forms no ground of relief from contracts fairly entered into, with a full knowledge of the facts;" and under circumstances repelling all presumptions of fraud, imposition, or undue advantage having been taken of the party; none of which are chargeable upon the appellants in this case; the question then is, were the complainants entitled to relief? To which we respond decidedly in the negative.

Lastly, the appellants rest their defence on the statute of limitations. If the thousand dollars claimed as damages were paid to the bank, at the time the bill of exchange was taken up, then the cause of action to recover the money, (had it been well founded) accrued at the time the mistaken payment was made, which could have been rectified in equity, or the money recovered back by a suit at law. The courts of law and equity have concurrent jurisdiction; and the complainants having elected to resort to equity, which they had the right to do; were as subject to be barred by the statute in the one court as in the other. In such cases the courts of equity act in obedience to the statutes of limitation, from which they are no more exempt than courts of law.

This suit having been brought more than five years after the bill was taken up; to apply the bar, it becomes necessary to inquire whether the damages were then paid. The complainants allege that they paid in July, 1819, three thousand three hundred and thirty dollars and sixty-seven cents, on account of the whole amount due, consisting of principal, interest, charges, and damages; and for the balance of the amount of the bill, Griffing and James Daniel executed their negotiable note for eight thousand dollars, payable sixty days after date, to William Armstrong, to which Cunningham, Hanson, and Henry Daniel were parties as endorsers or co-drawers; which note was discounted by the bank for the benefit of Griffing and James Daniel; and upon the express agreement between them and the bank, and the other parties to the note, that the proceeds of said eight thousand dollar note, should be applied to the payment of the balance due on said bill of exchange. The parties to this suit agreed in writing, that the statement above set forth was true; and the bill was liquidated by the proceeds of the note, and the three thousand three hundred and thirty dollars and sixty-seven cents.

If the pre-existing debt due the bank, and evidenced by the bill of exchange, was extinguished when the bill was taken up; then the remedy of the bank was gone, and the right to recover the one thousand dollars of excess arose. It is generally true, that the giving a note for a pre-existing debt, does not discharge the original cause of action, unless it is agreed that the note shall be taken in payment; 6 Cranch, 264. In reference to this principle, it is insisted for the appellees, that the eight thousand dollar note given to the bank, and the renewals of it afterwards, furnished mere evidence of the continuance of the original liability, from which they should be relieved; because the notes covered too much by a thousand dollars, with interest; so the court below thought, and decreed the abatement.

This Court thinks the facts do not involve the principle referred to. We are not told by the appellees that the eight thousand dollar note was taken in payment of the balance of the bill of exchange; but that three thousand three hundred and thirty dollars and sixty-seven cents in cash was paid, and the note discounted, the money obtained upon it, and " by express agreement, applied to the payment of the balance due on said bill of exchange." The debtors raised the cash, and paid the bill; nor did the eight thousand dollar note enter into the transaction, further than that the proceeds were applied to the

extinguishment of the pre-existing debt. Payment was, therefore, made on the 8th of July, 1819; and the thousand dollars could have been sued for then, as well as in 1827, when the bill of injunction was filed. It follows, the act of limitations is a bar to the appellees, aside from any other grounds of defence.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Kentucky, and was argued by counsel; on consideration whereof, it is now here ordered, adjudged and decreed by this Court, that the decree of the said circuit court in this cause, be, and the same is hereby reversed, and that this cause be, and the same is hereby remanded to the said circuit court, with directions to that court to discharge the injunction at law, and to dismiss the bill in this cause, at the cost of the complainants.