61 U.S. 290
 20 How. 290
 15 L.Ed. 822
 HORACE C. SILSBY ET AL., APPELLANTS,
v.
ELISHA FOOTE.
 December Term, 1857
 
 THIS was an appeal from the Circuit Court of the United States for the northern district of New York, sitting as a court of equity.
 There were two cases upon the docket, with precisely the same caption, one numbered 54, and the other 106.
 The case in question was the one numbered 106, which it was moved to dismiss, for the following reasons:
 And the said appellee comes into court at the December term thereof, 1857, and moves the said court to dismiss the appeal in this cause, docketed as No. 106 at the said term, upon the ground that there had been previously taken by the said appellants an appeal from the same portions of the decree made below, which are appealed from in this cause, and which prior appeal is still pending and undetermined in this court; and such motion will be made upon the records filed in this cause, and in cause No. 54 on the docket for December term, 1857.
 R. H. GILLET,
 December 18, 1857. Of Counsel for Appellee.
 Mr. Gillet's argument was as follows:
 Foot sued Silsby and others in equity in the Circuit Court for the northern district of New York, for violating his patent. A final decree was rendered therein on the 28th day of August, 1856. On the 4th of September thereafter, the defendants, by Samuel Blatchford, their solicitor, petitioned for an appeal from certain portions of the decree, which was allowed on the 6th September, by Mr. Justice Nelson, being within ten days of the date of the decree. Upon this appeal, the record of the proceedings were sent, and have been printed, and the case stands as No. 54 on the docket for the present term. (See Record in No. 54, Record, pp. 1, 3.)
 The decree was enrolled on the 11th day of December, 1856, on which day the same solicitor, in behalf of the defendants, presented a second petition of appeal from the same portions of the decree, which appeal was allowed on the same day, by N. K. Hall, district judge, and this appeal is now before the court at the present term as No. 106. (See Record, pp. 1, 3.)
 A motion is now made by Foot, the appellee, to dismiss the last-mentioned appeal, of which due notice has been given.
 The question presented is, which of the two periods is the one contemplated by the twenty-second section of the judiciary act of 1789, which provides, 'that final judgments and decrees may be removed and reaffirmed in the Supreme Court, and which shall not be done, however, except within five years after the rendering or passing the judgment judgment or decree complained of.' (1 U. S. L., 84, 85, sec. 22.)
 When was the decree passed—at the time of the hearing and actual decision, or when it was enrolled?
 This question is answered by reference to the mode of doing business in a court of equity. The court sits and decides, and its clerk or other officer enters the same in the minutes of the proceedings of the court. This is the act of the court performing its highest judicial functions. All that follows, whether performed by the clerk or judge, is merely carrying out the judicial determination, and authenticating it. The decision, or rendering, or passing, has been made; and what is subsequently done is mere authentication.
 'To enrol' means 'to register, to enter on the rolls of chancery or other courts, to make a record.' (Bouvier, 1 vol., 469.)
 'Enrolment—the registering or entering on the rolls of Chancery, King's Bench, Common Pleas, or Exchequer, or by the clerk of the place of the record of the Quarter Sessions of any lawful,' &c. (Ib., Inc. L. Dic.)
 Curtis, in his Commentaries, (p. 234,) speaks of the time when a decree is 'pronounced,' as the time from which the statute runs.
 At page 534 he speaks of the 'date of the final decree;' if appealed from in ten days thereafter, it will operate as a supersedeas.
 Appeals have been recognized on appeal before docketing or enrolling. In Roy v. Law, 3 Cranch, 179, a decree for a sale on a mortgage was held to be a final decree which could be appealed from.
 In Whiting v. Bank of U. S., 13 Peters, 6, 15, the same decision was made.
 Story, J., said the party had a right to appeal as soon 'as the decree was pronounced.' Michond v. Girod, 4 How., 503, proceeded upon the same ground.
 
 
 1
 In Forgay v. Conrad, 6 How., 201, 203, the above cases were cited and approved.
 
 
 2
 Bank of the U. S. v. Daniel, 12 Peters, 32, p. 52. The whole of the matter in dispute has reference to the date of the decree.
 
 
 3
 Corning v. The Troy Iron and Nail Factory, 15 How., pp. 451, 459, 465, 466, is a case to show that there can be no second appeal where the subject-matter has been removed from the court below.
 
 
 4
 In the present case, the matters appealed from in December had been removed from the court below in September, and there was nothing left for the second appeal to act upon.
 
 
 5
 Mr. Blatchford opposed the motion.
 
 
 6
 This is a motion to dismiss No. 106, on the ground that a prior appeal has been taken in No. 54, from the same parts of the same final decree.
 
 
 7
 What is the decree?
 
 
 8
 The question is, which is regular?
 
 
 9
 If the appeal in 106 is irregular, it is because the appeal in 54 is regular. If the appeal in 106 is regular, then the appeal in 54 is irregular. The reasons for taking the two appeals were these: Practically, there is no difference to defendants, except as to the return in No. 106. (See rules 31 and 32, as to complete record.) The court will see why return was so made in 106. Cross appeal in 158, return made in same manner. Taking 54 and 106 together, there is a complete record; and even though the court dismiss 54, they may consider the return in 54 as forming part of the return in 106, as the clerk says, in his return in 106, they do. And if the court deny the motion to dismiss 106, they will please consider us as moving to dismiss 54, which motion would of course be granted, if the motion to dismiss 106 is denied; and then as moving, if necessary, under rule 32, for a certiorari to complete the record in 106. We desire the court to dispose now of all questions of practice connected with these cases, so that if 106 stands for hearing, it may stand with complete record. The defendants ought not to suffer for the clerk's mistake, but, without a certiorari, the court can order the record in 54 to remain here, and form a part of the record in 106, though the appeal in 54 is dismissed.
 
 
 10
 By p. 22 of the judiciary act of 1789, as modified by p. 2 of the act of March 3, 1803, (chap. 40,) an appeal from a final decree is to be taken within five years after rendering or passing the judgment or decree complained of.
 
 
 11
 By p. 23 (as so modified) the appeal is a supersedeas, and stays execution in cases only where the appeal is taken, and a copy lodged for the adverse party within ten days (Sundays exclusive) after rendering the judgment or passing the decree complained of, until the expiration of which ten days, execution shall not issue in any case where an appeal may be a supersedeas.
 
 
 12
 What is the passing of the decree?
 
 
 13
 Under p. 23, we think it is the recording and enrolling of the decree, in such shape that the party entitled to execution on it can immediately issue his execution. The party is to be stayed for having his execution for ten days after the time when he would otherwise be entitled to it, and the ten days do not begin to run till he would be at liberty, but for this stay, to issue his execution.
 
 
 14
 Therefore, taking pp. 22 and 23 together, the decree is passed, when it is in such a state that an execution can be issued on it, if there be no stay by appeal.
 
 
 15
 How it is as to the decree. (See pp. 10 and 11, of No. 106.)
 
 
 16
 Award to pay certain sums, and interest and costs to be taxed, and interest, then execution is given for such costs, and for the sums decreed. He cannot have any execution till his costs are taxed. This is by the decree itself.
 
 
 17
 But beyond that, by general equity practice, he can have no execution till the decree is signed and enrolled. Here the record says (p. 11) that this final decree is signed and enrolled Dec. 11th, 1856, and the appeal in 106 was taken the same day.
 
 
 18
 Why can't he have execution till the decree is enrolled? Because, till then, the decree is open for rehearing; but after that it is not.
 
 
 19
 Rule 88 in equity says, 'No rehearing shall be granted after the term at which the final decree of the court shall have been entered and recorded, if an appeal lies to the Supreme Court.' Entry alone does not cut off rehearing. The decree must be recorded, to cut off a rehearing. Recording is enrolling. Therefore, there can be a rehearing till the decree is recorded or enrolled, and there can be no execution till a decree is enrolled. And the right to execution on the one side gives, under pp. 22 and 23, the right to appeal on the other side. Because the act manifestly contemplates that the decree is not passed till the right to execution under it is ripened. Because the ten days spoken of in p. 23 are to run from the passing of the decree, and during that ten days there is to be no execution. Hence, to make the provisions all harmonious, the right to issue execution, but for the stay, must be simultaneous with the passing of the decree.
 
 
 20
 Now, is it laid down in all the books that there can be no execution till enrolment, and that enrolment is necessary to make the decree a record? (1 Barb. Ch. Pr., 342, 2 Dan.; Perkins, ed. of 1846, 1220, 1221.) It will not, till enrolment, be treated by other courts as a record. The reason given is, because, till then, it is open for rehearing. Hence in rule 88 the word recorded is used, which means made a record by enrolment.
 
 
 21
 Till enrolled, it can't be pleaded in bar to another suit for the same matter. (Same reference as above.)
 
 
 22
 In England, the time for appeal runs two years from the enrolment. (3 Dan., 131.)
 
 
 23
 Besides, under p. 22, in connection with the act of Dec. 12, 1794, on an appeal which is to be a stay, security is to be given for the amount recovered below, damages and costs. (Catlett v. Brodie, 9 Wheat., 553.) How can the amount recovered below, for which this security is to be given, be ascertained till the costs are taxed and the decree enrolled?
 
 
 24
 The views we maintain seem to follow from those announced by this court in Forgay v. Conrad, 6 How., 204. 'When the decree directs the defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one.'
 
 
 25
 Here a sum of money is directed to be paid, but there can be no execution on the decree till the costs are taxed and the decree is signed and enrolled. Therefore, on the 28th of August, 1857, the plaintiff was not entitled to have the decree carried immediately into execution, and the appeal in 54 was irregular.
 
 
 26
 As to arguing the cross appeal in 158 with the original appeal, whether it be 54 or 106, the record in 158 is not printed. We prefer to wait.
 
 
 27
 Plaintiff might have taken his cross appeal as early at least as Dec. 11, 1856. He waited till July, 1857. It is his own fault. We had to appeal, to stay execution.
 
 
 28
 Mr. Justice NELSON delivered the opinion of the court.
 
 
 29
 This is a motion to dismiss an appeal docketed as No. 106, on the ground that a previous appeal, docketed No. 54, had been taken by the same parties, and from the same portions of the decree below. The final decision had been made by the court, between the parties, on the coming in of the master's report on the 28th August, 1854, and an appeal duly taken on the 4th September following. The decree was special in its terms, and was not settled or signed by the judge till the 11th December, 1856, on which day the second appeal was taken. As the appellant desired to appeal within the ten days, so as to stay execution, the second appeal was taken for abundant caution, as there might be a doubt from which period the ten days should be counted, namely, the time of the final decision of the court, or of the signing and filing of the special decree in form.
 
 
 30
 By the twenty-second section of the judiciary act, modified by the second section of the act of March 3, 1803, an appeal from a final decree must be taken within five years after the rendering or passing of the judgment or decree complained of. And by the twenty-third section, as modified above, the appeal is a supersedeas, and stays execution in cases only where it is taken and a copy lodged for the adverse party within ten days (Sundays exclusive) after rendering the judgment or passing the decree complained of. The time to be taken as when the judgment or decree may be said to be rendered or passed may admit of some latitude, and may depend somewhat upon the usage and practice of the particular court. In the case of a simple judgment or decree, such as an affirmance or reversal, and the like, there would seem to be no difficulty in taking the appeal at any time within the ten days after the decision on the case was pronounced. But where the decree is special, and its terms to be settled, there is a propriety in waiting for its settlement before taking the appeal. Whether taken or not, may sometimes depend upon the decree as settled. In the second circuit, with the practice of which I am the most familiar, it is supposed by many of the profession that the proper time for taking the appeal in such a case is after the settlement of the decree. As this court, however, has always held, that if an appeal is taken in court at the time of rendering the decision, or during the term, no citation is necessary, and as appeals are, perhaps, more frequently taken within the ten days after the decision is pronounced and entered on the minutes by the clerk, it may be admitted that when thus taken it is regular, and stays execution in the court below. And we are also of opinion, that if taken within ten days after the decree is settled and signed by the judge, and filed with the clerk, that it is in time to stay the proceedings. The recognition of the two periods from which the ten days may be counted becomes necessary, on account of the difference in the modes of proceeding and practice in the different circuits. This question cannot arise in England, as the time for appeal runs two years from the enrolment of the decree. (3 Dan. Pr., 131.) The time of enrolment cannot well be adopted by this court, as on many of the circuits it is understood, according to the practice, no enrolment of the decree takes place.
 
 
 31
 As, upon our view of the case, presented on the motion, the first appeal was regular, the one taken and standing on the docket No. 106 should be dismissed.