**UNITED STATES v. RICHARDS.**
Cr. No. 689–50.

United States District Court
District of Columbia.
June 15, 1950.

Harold H. Bacon, Washington, D. C., attorney for the United States.

Josiah Lyman and Kathryn M. Schwarz, Washington, D. C., attorneys for defendant.

KIRKLAND, District Judge.

The defendant herein was charged with grand larceny involving the alleged theft of an automobile. On the occasion of his taking the stand, the question arose, upon objection of the defendant, as to whether or not a prior felony conviction for an unauthorized use of an automobile could be shown as a basis of impeachment.

In support of the objection, counsel for the defendant placed in evidence an honorable discharge of the defendant, Robert L. Richards, which was granted on the eighth day of November, 1946, and the Court found as a fact that he was in the armed services of the United States for a period of one year from November 2, 1945, until November 8, 1946, at which time he was honorably discharged.

The Court also judicially noticed the Presidential Proclamation No. 2676,[1] grant-

I.         "PROCLAMATION 2676
GRANTING PARDON TO CERTAIN PERSONS WHO HAVE SERVED IN THE ARMED FORCES OF THE UNITED STATES

WHEREAS the Constitution of the United States provides that the President 'shall have power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment'; and

WHEREAS subsequent to July 29, 1941, there were inducted and enrolled in the armed forces of the United States persons who had prior to their entry, induction or enrollment been convicted of offenses against the laws of the United States or the Territory of Alaska, other than the laws for the government of the Army and Navy; and

WHEREAS it appears that such convicted persons who have or shall hereafter be honorably discharged or separated from the armed forces, or separated from the armed forces, or sep-

arated with honor from active service therein, after serving in active status for not less than one year ought to have restored to them the political, civil, and other rights of which they were deprived by reason of such conviction and which may not be restored to them unless they are pardoned:

NOW, THEREFORE, I, HARRY S. TRUMAN, President of the United States of America, do hereby grant a full pardon to all persons convicted of violation of any law of the United States or of the Territory of Alaska, except the laws for the government of the Army and the Navy, who on or after the twenty-ninth day of July, 1941, and prior to the date hereof, entered, enrolled in, or were inducted into the armed forces of the United States and who after serving in active status for not less than one year have been or shall hereafter be honorably discharged or separated therefrom, or separated under honorable con-

ing pardons to certain persons who had served in the armed forces of the United States, which was a general amnesty proclamation issued by the Honorable Harry S. Truman, President of the United States, on December 24, 1945, declaring that those who served honorably in the armed forces should receive a full pardon.

As far as research could ascertain, this particular matter has never been interpreted by any Federal Court since the proclamation was issued.

In some instances Presidential proclamations have been accompanied by letters of transmittal or letters of explanation. That is not present in this instance. Therefore, the Court is of the opinion that a judicial interpretation of the effect of such pardon will aid in the disposition of this objection.

The pardon issued by President Truman is, by its terms, a full pardon and in issuing this general amnesty the President has followed precedent set by Washington in 1795, by Adams in 1800, by Madison in 1815, by Lincoln in 1863, and by Roosevelt in 1902.[2] The effect of this pardon is to be governed by the treatment given any other full pardon issued by the President,[3] except such pardons as are issued for innocence.

The question at bar, then, is confined to the simple problem of whether or not a pardon removes the admissibility of the original judgment for the purpose of impeaching the credibility of a witness.

The history of the effect of a pardon is both interesting and enlightening. Blackstone referred to the pardoning power as "the most amiable prerogative of the crown" and predicted that, "In democracies, this power of pardon can never subsist; for there nothing higher is acknowledged than the magistrate who administers the laws * * *." 4 Blackstone's Commentaries, 4th Ed., by Kerr, 404 (1876). The framers of our Constitution were not impressed, however, and provided, " * * * and he (the President) shall have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment". Art. 2, Sec. 2, Cl. 1. This action thus bestowed upon the President, "the most amiable prerogative of the crown".

ditions from active service therein: *Provided, however*, that such pardon shall not be construed to include the pardon of such persons for any offenses for which conviction has been obtained after the date of such entry, enrollment, or induction into service.

IN WITNESS WHEREOF, I have hereunto set my hand and caused the seal of the United States of America to be affixed.

DONE at the City of Washington this 24th day of December, in the year of our Lord nineteen hundred and forty-five, and of the Independence of the United States of America the one hundred and seventieth.

HARRY S. TRUMAN

(SEAL)
By the President:
   DEAN ACHESON,
   Acting Secretary of State."

2. James D. Richardson, Messages and Papers of the Presidents, (1903), (Washington, Vol. I, p. 181; Adams, Vol. I, p. 303; Madison, Vol. I, p. 512, 514, 543; Lincoln, Vol. VI, p. 213, 216; Roosevelt, Vol. X, p. 496)

3. It should be noted that anyone may apply for a pardon after completion of a sentence for the purpose of restoring those rights which were lost as a result of the conviction. Rule 16 of the Rules Governing Petitions for Executive Clemency, approved January 19, 1946, provides:

"16. A petition for pardon after completion of sentence will not be referred for reports unless the petitioner has been released from custody not less than three years and is not on parole or probation. A longer period may be required before favorable action is taken, dependent largely on the nature of the offense and the character of the petitioner, both before and since his conviction. In cases of perjury, subornation of perjury, or violation of a public trust involving personal dishonesty, or other crimes of a serious nature, the lapse of five years after release is usually required. Provided further that when the sentence of a prisoner on parole has been commuted upon a petition presented under rule 8, a petition for pardon will not be referred for reports unless the petitioner has been discharged from supervision not less than two years."

One of the earliest decisions on the question at bar was rendered in Rockwood's Case, Holt 683, 685; 90 Eng.Reprint 1278 (1696) where the Court said: "* * * the pardon restores him to his former capacity, and prevents any further forfeiture; * * * the conviction indeed might be objected to his credit, but could not be urged against his being a witness * * *."

A further statement of the common law rule is found in 7 Bacon, Abridgement of the Law, Bouvier's Ed., title Pardon (h), p. 416 (1856): "Also a pardon restores a man to his credit so as to enable him to be a witness; but yet his credit must be left to the jury."

The confusion among the courts of this country as to the effect of a pardon may be traced to dictum of a Supreme Court decision which held: "A pardon reaches both the punishment prescribed for the offense and the guilt of the offender * * *. It releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense * * *. It removes the penalties and disabilities, and restores him to all his civil rights. It makes him, as it were, a new man, and gives him a new credit and capacity." Ex parte Garland, 1860, 4 Wall. 333, 380, 71 U.S. 333, 380, 18 L.Ed. 366. Yet some years later the Court in Burdick v. U. S., 1914, 236 U. S. 79, 91, 35 S.Ct. 267, 269, 59 L.Ed. 476, referred to the "confession of guilt implied in the acceptance of a pardon".

The common law treatment of a pardon was recognized by one of our state courts in Curtis v. Cochran, 1870, 50 N.H. 242: "A pardon is not presumed to be granted on the ground of innocence or total reformation. It removes the disability, but does not change the common-law principle that the conviction of an infamous offence is evidence of bad character for truth. The general character of a person for truth, bad enough to destroy his competency as a witness, must be bad enough to affect his credibility when his competency is restored by the executive or legislative branch of the government."

In Vedin v. McConnell, 1927, 22 F.2d 753, 754 the Ninth Circuit Court of Appeals held that: "The pardon in no wise negatives the implications of the conviction in respect of plaintiff's character, and the jury was entitled to knowledge of it as bearing on his credibility as a witness."

The text writers are in accord with this statement of the law, and in considering the existent confusion in the courts, Professor Williston said: "If, however, the eyes of the law were unable to distinguish between a pardoned convict and one who had never been found guilty of a crime, proof of the conviction should be as inadmissible to affect the credibility of the witness as it is to affect his capacity to testify; yet it has always been the law and still is, that in spite of the pardon, the conviction may be used to discredit the witness." Williston, Does a Pardon Blot Out Guilt?, 28 Harvard Law Review, 647 (1915), citing U. S. v. Jones, 1824, 2 Wheeler Cr.Cas., N.Y., 451; Baum v. Clause, 1843, 5 Hill, N.Y., 196; and Martin v. Commonwealth, 1904, 78 S.W. 1104, 25 Ky.Law Rep. 1928 (wherein the Court held that evidence of the pardon was not admissible as tending to remove the discredit of the conviction). See also Wigmore on Evidence, Sec. 980(3), p. 543, and People v. Hardwick, 204 Cal. 582, 269 P. 427, 59 A.L.R. 1489.

Another author recently wrote that: "A prisoner pardoned for good behavior in prison, or one given a pardon after service of his sentence, in order to restore his civil rights, should not thereupon resume the position of an innocent man, but should continue to be regarded as a convicted criminal who has served time in the penitentiary for his crime * * *. If offered as a witness in Court, his credibility should be subject to the same suspicion as that of any other convicted criminal * * *. The damage to his credibility is not a legal consequence of the conviction; the conviction is merely evidence that he is untrustworthy, a fact not wiped out by pardon * * *. Insofar as conviction of crime is evidence bearing upon a witness' truthfulness, it is not affected by such a pardon * * *."

Weifhofen, The Effect of a Pardon, 88 U. of Pa.Law Rev. 177, 179, 183, 184 (1939).

With further reference to the effect of this Presidential proclamation, the Department of Justice stated in their Volume V, Bulletin 7, Criminal Division, dated March 4, 1946:

"1. The fact of conviction remains insofar as it has a bearing on character. 22 Opinion Att. Gen. 36, 39–40. It does not bar the competency of the party to testify. Boyd v. U. S., 142 U.S. 450 [12 S.Ct. 292, 35 L.Ed. 1077] (1892). However, it is relevant as to the character of a party or the credibility of a witness. Vedin v. McConnell, [9 Cir.], 22 F.2d 753.

2. The beneficiaries would not formally have to accept the pardon, nor plead it, when parties to an action, in order to acquire the benefits. Armstrong v. U. S., [13 Wall. 154], 80 U.S. 154 [20 L.Ed. 614]. The pardon is a matter of public record, of which the court can take judicial notice. U. S. v. Wilson, [7 Pet. 150], 32 U.S. 150 [8 L.Ed. 640].

3. The pardon eliminates any continuing penalty against the beneficiaries, as for instance, unpaid balances of fines. Ex parte Garland, [4 Wall. 333, 380–381], 71 U.S. 333, 380–381 [18 L.Ed. 366]."

These foregoing remarks point out the reason for the rule, and on this basis and on the authority of the aforementioned decisions, the ruling of this Court is that the prior conviction as well as the pardon may be shown, and the credibility of the witness will be left to the jury.