## RICHARDS v. UNITED STATES.
### No. 10700.

United States Court of Appeals
District of Columbia Circuit.

Argued June 20, 1951.

Decided Sept. 27, 1951.

Fahy, Circuit Judge, dissented in part.

Josiah Lyman, Washington, D. C., with whom Kathryn M. Schwarz, Washington, D. C., was on the brief, for appellant.

(Joseph A. Sommer, Asst. U. S. Atty., Washington, D. C., with whom George Morris Fay, U. S. Atty., and Harold H. Bacon and Joseph M. Howard, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before PRETTYMAN, FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

The defendant Richards was convicted of grand larceny in the United States District Court for the District of Columbia, and appeals.

I.

We are confronted at the outset by the Government's contention that this court lacks jurisdiction because the appeal was not taken "within 10 days after entry of the judgment or order appealed from * * *," as required by Rule 37(a)(2) of the Federal Rules of Criminal Procedure, 18 U.S.C.

It appears that the criminal docket of the District Court contains two entries in regard to the disposition of Richards' case, namely:

"June 16, 1950—Sentenced to imprisonment for a period of Twenty (20) months to Five (5) years. Attorney Josiah Lyman present. Kirkland, J."

"June 19, 1950—Judgment and commitment of 6/16/50, filed. Kirkland, J."

Notice of appeal was filed on Richards' behalf on June 27th, more than ten days after June 16th, which the Government contends is the crucial date, but within ten days after the 19th.

We think that this notice of appeal was timely. The expression "entry of the judgment", as used in Rule 37(a)(2), is not defined or explained by the Criminal

Rules.[1] Nor have we found any decisions interpreting the Rules in this regard. But Criminal Rule 32(b) requires that a judgment of conviction shall be more than a formality; it must "set forth the plea, the verdict or findings, and the adjudication and sentence." Rule 32(b) further requires that "The judgment shall be signed by the judge and entered by the clerk." As Judge Magruder of the First Circuit has said in a somewhat similar context, the clear implication of the Rule is that "the judgment must pre-exist before the clerk can perform the clerical or ministerial act of entering it." In re Forstner Chain Corp., 1 Cir., 177 F.2d 572, at page 576. The formal document reflecting the judgment and commitment in the present case, signed by the judge, begins with the recital "On this 16th day of June, 1950 * * * It is adjudged * * *," and bears no other date. The judge may well have signed it on that day; perhaps we may even presume that he did so. June 16th was, of course, the day on which Richards was sentenced in open court. But the clerk did not make any record of the signed judgment on the criminal docket until June 19th, when he made the entry "Judgment and commitment of 6/16/50, filed. Kirkland, J." We think that this was the "entry of the judgment" of which Rule 37(a)(2) speaks. Decisions of the Supreme Court prior to the promulgation of the Rules, though not controlling, lend support to this view. United States v. Hark, 320 U.S. 531, 64 S.Ct. 359, 88 L.Ed. 290; Silsby v. Foote, 20 How. 290, 295, 61 U.S. 290, 15 L.Ed. 822; Seymour v. Freer, 5 Wall. 822, 72 U.S. 822, 18 L.Ed. 564; Rub-

ber Co. v. Goodyear, 6 Wall. 153, 73 U.S. 153, 18 L.Ed. 762; Polleys v. Black River Co., 113 U.S. 81, 5 S.Ct. 369, 28 L.Ed. 938. Other persuasive authority, though likewise not strictly in point, looks in the same direction. Neely v. Merchants Trust Co. of Red Bank, N. J., 3 Cir., 110 F.2d 525; Rosenberg v. Heffron, 9 Cir., 131 F.2d 80; United States v. Moore, 5 Cir., 182 F.2d 336; United States v. Rayburn, 8 Cir., 91 F.2d 162; In re Hurley Mercantile Co., 5 Cir., 56 F.2d 1023. See also Hill v. U. S. ex rel. Wampler, 298 U.S. 460, 464, 56 S.Ct. 760, 80 L.Ed. 1283.

This conclusion appears to us to be logically inescapable, under the wording of the Rules.[2] At the same time, we think we should add that it does not seem to us to be a conclusion prejudicial to the interests of either the Government or the defendant. It is, to be sure, a conclusion favorable to the remedy of appeal—a remedy we are not inclined to undervalue. As far as the effective date of the defendant's sentence of imprisonment is concerned, that is a matter governed by express statutory provisions, not affected by our ruling here. 18 U.S.C. § 3568. We do not need to decide in this case whether, if a defendant takes an appeal immediately after being sentenced but before entry of judgment of conviction, his appeal is effectively taken. We think it proper to note, however, that there is authority for the proposition that an appeal so taken is not a nullity, but becomes fully effective upon subsequent entry of judgment. See Luckenbach S. S. Co. v. United States, 272 U.S. 533, 535, 47 S.Ct. 186, 71 L.Ed. 394; Woods v. Nicholas, 10 Cir., 163

1. In contrast, in civil actions the problem here presented is specifically covered by Rules 58 and 79(a) of the Federal Rules of Civil Procedure, 28 U.S.C., and by the provisions of 28 U.S.C. § 2107. Rule 58 provides that "The notation of a judgment in the civil docket as provided by Rule 79(a) constitutes the entry of the judgment; and the judgment is not effective before such entry." In many situations, under Rule 58, the clerk makes the entry of judgment "without awaiting the filing of a formal judgment approved by the court." See Notes of Advisory Committee on Amendments to Rules, appended to Rule 58, F.R.Civ.P. in 28 U.

S.C.A.; Milton v. United States, 5 Cir., 120 F.2d 794. Cf. Hill v. Hawes, 320 U. S. 520, 64 S.Ct. 334, 88 L.Ed. 283.

2. We recognize, of course, that the time of perfecting an appeal is a jurisdictional matter, and that we lack power to extend the time fixed by the Rules. Swihart v. United States, 10 Cir., 169 F.2d 808; United States v. Froehlich, 2 Cir., 166 F.2d 84; United States v. Bloom, 2 Cir., 164 F.2d 556, 557; Howard T. Jensen v. United States, 10 Cir., 160 F.2d 104. But that principle, which is relied on by the Government in this case, seems irrelevant here.

F.2d 615; Porter v. Borden's Dairy Delivery Co., 9 Cir., 156 F.2d 798. Compare Silsby v. Foote, 20 How. 290, 295, 61 U.S. 290, 15 L.Ed. 822; Berman v. United States, 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204.

## II.

The second major issue in the case relates to the effect to be given a pardon received by the appellant in respect of a prior conviction. Appellant contends that in view of the pardon it was error to allow the prosecutor to cross-examine him concerning the earlier conviction, in an effort to impeach his credibility.

Appellant took the stand in his own behalf. The prosecutor then questioned him concerning a conviction in a Federal court on January 5, 1942, based on the unauthorized use of a motor vehicle. Appellant objected to this line of questioning, on the ground that he had received a full pardon. The court took judicial notice of Presidential Proclamation No. 2676, 60 Stat. 1335, entitled "Granting Pardon to Certain Persons Who Have Served in the Armed Forces of the United States." [3] That proclamation, the text of which is appended to this opinion, was issued on December 24, 1945. In effect, it promulgated a general amnesty for persons convicted of violations of Federal statutes who had served honorably in the armed forces during World War II for not less than one year. Counsel for the appellant placed in evidence an honorable discharge granted to the appellant, and the trial court found as a fact that he had served honorably for more than one year in the armed services. The appellant's objections were, however, overruled.

Judge Kirkland later prepared, prior to sentence and judgment, an extensive opinion supporting his ruling. United States v. Richards, D.C., 91 F.Supp. 323, noted 25 Tulane L.Rev. 281. We need not duplicate here the material contained in that opinion concerning the history of Executive pardons, nor repeat its copious citation of authority. We wish to add simply this: that the fundamental question here is whether an exception should be engrafted on the general rule—which is statutory in this jurisdiction[4]—that where a defendant takes the stand the prosecutor may question him concerning prior convictions, in an effort to attack his credibility. That rule is one which has met with considerable criticism. It not only permits the prosecutor to throw doubt upon the defendant's testimony regarding the facts of the case being tried, but also may result in casting such an atmosphere of aspersion and disrepute about the defendant as to convince the jury that he is an habitual lawbreaker who should be punished and confined for the general good of the community. Efforts to limit that rule and its consequences are accordingly not without considerable appeal.

It has been strongly urged in this case that we have before us a situation in which the usual application of the rule permitting impeachment of the defendant should be abrogated. Since the rule is statutory in the District of Columbia, there may be real doubt as to our power to create such an exception. Certainly, we cannot evolve an exception not in harmony with the basic purpose and reasoning of the legislation. That reasoning is no doubt this—that when the jury comes to assess the truth of any man's testimony it should be allowed to consider his previous criminal activity and its impact on his trustworthiness. Shall a pardon be deemed to change the fact that a person was convicted of criminal activity on a past occasion? "If the pardon was granted because the prisoner had political influence, or was a model prisoner, or behaved bravely in a prison fire, the pardon should not affect his credibility at all. The damage to his credibility * * * is not a legal consequence of the conviction; the conviction is merely evidence that he is untrustworthy, a fact not wiped out by the pardon." Weihofen, The Effect of a Par-

---

3. 10 Fed.Reg. 15,409.

4. D.C.Code (1940 ed.) § 14-305; Goode v. United States, 60 U.S.App.D.C. 67, 149 F.2d 377; United States v. Boyer, 80 U.

S.App.D.C. 202, 150 F.2d 595, 166 A.L.R. 209; Hall v. United States, 84 U.S.App. D.C. 209, 171 F.2d 347; Campbell v. United States, 85 U.S.App.D.C. 133, 176 F.2d 45.

don, 88 U. of Pa.L.Rev. 177, 183. A different view might perhaps be taken where the pardon was granted by the Executive on the express ground that the convicted man's innocence had been established, and that therefore his previous conviction was a miscarriage of justice. *Ibid.* But that is hardly the situation here.

The pardon on which appellant relies was not granted to him individually, but was in the nature of a general amnesty to a class of persons, without regard to guilt or innocence. The gratitude of the Nation to those who had honorably served in the armed forces was doubtless the primary factor motivating the Executive in extending this measure of clemency and grace. Nothing on the face of the proclamation indicates any specific desire on the part of the Executive to accord to the recipients the particular measure of benefit (freedom from cross-examination) which is sought in this case. The President, in using the language "full pardon," doubtless desired to grant all—but no more than—the usual and established benefits deriving from the issuance of individual instruments of pardon. Those usual and established benefits do not include the immunity from questioning which is here demanded. The ancient

British rule was thus expressed long ago by Lord Hale: "If the king pardon * * * offenders, they are thereby rendered competent witnesses, tho their credit is to be still left to the jury, for the king's pardon takes away *poenam & culpam in foro humano* * * * but yet it makes not the man always an honest man." [5] That was the law prior to the adoption of our Constitution. Nothing in the Constitution requires a different result, and no court has ever held or even suggested that it does. The current of American decision, following the British cases,[6] is unbroken: an offender, if pardoned, must still face the fact that his conviction is admissible in evidence as bearing on his credibility.[7] We perceive no reason, derived from the text of the proclamation or elsewhere, which would justify a departure from that line of authority. Certainly the executive branch of the Government has not suggested such a departure.[8]

The United States Supreme Court has not, it is true, had occasion to pass squarely on the question here presented. In cases involving the effect of a pardon in certain other contexts, it has taken a generous view. It has held, for example, that a Presidential pardon will relieve the defend-

5. 2 Hale P.C. 278 (1678). Accord: Rookwood's Case, Holt 683, 685; 90 Eng. Repr. 1278 (1696), where the court said of a pardoned offender that "The conviction indeed might be objected to his credit, but could not be urged against his being a witness."

6. See United States v. Wilson, 7 Pet. 150, 160, 32 U.S. 150, 8 L.Ed. 640, where Chief Justice Marshall stresses the weight which should be given to the "principles respecting the operation and effect of a pardon" prevailing in Great Britain.

7. Commonwealth v. Green, 1822, 17 Mass. 515; United States v. Jones, 1824, Fed. Cas.No.15493, 2 Wheeler Crim.Cas., N.Y., 451; Werner v. State, 1884, 44 Ark. 122; Bennett v. State, 1887, 24 Tex.App. 73, 5 S.W. 527; Territory v. Chavez, 1896, 8 N.M. 528, 45 P. 1107; Martin v. Commonwealth, 1904, 78 S.W. 1104, 25 Ky. Law Rep. 1928; Bryant v. United States, 5 Cir., 1919, 257 F. 378, 383; State v. Grant, 1926, 3 W.W.Harr., Del. 195, 133 A. 790; People v. Hardwick, 1928, 204 Cal. 582, 269 P. 427, 59 A.L.R. 1480.

See also Baum v. Clause, 1843, 5 Hill, N. Y., 196; Curtis v. Cochran, 1870, 50 N. H. 242, citing numerous early authorities; Wallamet R. T. Co. v. Oregon S. N. Co., 1876, Fed.Cas.No.17,106; In re Spenser, 1878, Fed.Cas.No.13,234; conviction considered on question of good moral character in citizenship case, in spite of pardon; Vedin v. McConnell, 9 Cir., 1927, 22 F.2d 753. Consult Williston, Does a Pardon Blot Out Guilt?, 28 Harv.L.Rev. 647, 654; III Wigmore, Evidence, § 980(e).

8. In fact, if the attitude of the Department of Justice is to be taken as any evidence of the general position of the executive branch of the Government on the problem before us, or of the President's intention in issuing the instant proclamation, it may be noted that the Department has long taken a stand completely in accord with the authorities cited above. See 22 Op.Atty.Gen. 36 (opinion of Attorney General Griggs, 1898); 5 Bull. Crim.Div., Dept. Justice, No. 7 (1946).

ant from the forfeiture of property. United States v. Klein, 13 Wall. 128, 80 U.S. 128, 20 L.Ed. 519; Carlisle v. United States, 16 Wall. 147, 83 U.S. 147, 21 L.Ed. 426; Osborn v. United States, 91 U.S. 474, 23 L.Ed. 388. Sweeping statements—unnecessary to the actual rulings—can be found in the opinions in those cases; for example, that a pardon "obliterates in legal contemplation the offense itself", Carlisle v. United States; that it releases the offender "from the consequences of his offence", Osborn v. United States; and that it "blots out the offence", United States v. Klein. In Ex parte Garland, 4 Wall. 333, 71 U.S. 333, 18 L.Ed. 366, Mr. Justice Field went so far as to say: "A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he has never committed the offence." The quoted statement occurred in a case in which it was held that the petitioner was entitled to be readmitted to the practice of law, his possession of a Presidential pardon being one of the factors considered by the Court. That statement, of course, is hardly controlling on the issue now presented.[9]

■ Pertinent here, on the other hand, is the unanimous holding of the Supreme Court in Carlesi v. People of State of New York, 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843, to the effect that a Presidential pardon for a Federal crime does not prevent a state from punishing the offender for a second (similar) offense by imposing a heavier sentence based on the fact of repetition. That holding demonstrates that a pardon does not "blot out guilt" in any literal or uncritical sense; the dicta in the older cases cannot blind the courts to realities.[10] The opinion of the Court, delivered by Chief Justice White, concluded by saying: " * * * we must not be understood as in the slightest degree intimating that a pardon would operate to limit the power of the United States in punishing crimes against its authority to provide for taking into consideration past offenses committed by the accused as a circumstance of aggravation even although for such past offenses there had been a pardon granted.

"Indeed, we must not be understood as intimating that it would be beyond the legislative competency to provide that the fact of the commission of an offense after a pardon of a prior offense, should be considered as adding an increased element of aggravation to that which would otherwise result alone from the commission of the prior offense." 233 U.S. at page 59, 34 S. Ct. at page 578.

■ On the whole, we consider that the ends of justice will be better served by permitting the prosecutor to bring out the facts concerning the defendant's previous conviction in a case of this sort than by en-

9. Commenting on Mr. Justice Field's statement that in the "eye of the law" the pardoned offender is innocent, Professor Williston rejoins "then the eyesight of the law is very bad." Williston, supra note 7, 28 Harv.L.Rev. at 648. An earlier comment by a Federal trial judge on the effect of Mr. Justice Field's dictum is also worth repeating here: "This is probably as strong and unqualified a statement of the scope and efficacy of a pardon as can be found in the books. And yet I do not suppose the opinion is to be understood as going the length of holding that while the party is to be deemed innocent of the crime by reason of the pardon from and after the taking effect thereof, that it is also to be deemed that he never did commit the crime or was convicted of it. The ef-

fect of the pardon is prospective and not retrospective. It removes the guilt and restores the party to a state of innocence. But it does not change the past and cannot annihilate the established fact that he was guilty of the offense. * * * The offender is purged of his guilt, and thenceforth he is an innocent man; but the past is not obliterated nor the fact that he had committed the crime wiped out." In re Spenser, Fed.Cas.No.13,234 at pages 922–923.

10. See Weihofen, supra, 88 U. of Pa.L. Rev. at 185, for citation to the line of decisions in certain states where "second offender" laws are in force, to the effect that a pardon for the first offense does not relieve an offender from the statutory consequences of a second offense.

deavoring to keep the fact of such a conviction from the jury. The latter will, after all, have before it not only that fact but also the defendant's record of honorable service and the consequent extension to him of the President's pardoning power. If the general rule permitting impeachment of a defendant is valid, and we are bound so to consider it, then we think it follows that we should not create an exception in cases of the present sort.

As we find no grounds for reversal in the other assignments of error asserted by appellant, the judgment of the District Court will be

Affirmed.

### Appendix
### "Proclamation 2676
### "Granting Pardon to Certain Persons Who Have Served in the Armed Forces of the United States

*"By the President of the United States of America*

*"A Proclamation*

"Whereas the Constitution of the United States provides that the President 'shall have power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment'; and

"Whereas subsequent to July 29, 1941, there were inducted and enrolled in the armed forces of the United States persons who had prior to their entry, induction or enrollment been convicted of offenses against the laws of the United States or the Territory of Alaska, other than the laws for the government of the Army and Navy; and

"Whereas it appears that such convicted persons who have or shall hereafter be honorably discharged or separated from the armed forces, or separated with honor from active service therein, after serving in active status for not less than one year ought to have restored to them the political, civil, and other rights of which they were deprived by reason of such conviction and which may not be restored to them unless they are pardoned:

"Now, Therefore, I, Harry S. Truman, President of the United States of America,
do hereby grant a full pardon to all persons convicted of violation of any law of the United States or of the Territory of Alaska, except the laws for the government of the Army and the Navy, who on or after the twenty-ninth day of July, 1941, and prior to the date hereof, entered, enrolled in, or were inducted into the armed forces of the United States and who after serving in active status for not less than one year have been or shall hereafter be honorably discharged or separated therefrom, or separated under honorable conditions from active service therein: *Provided, however,* that such pardon shall not be construed to include the pardon of such persons for any offenses for which conviction has been obtained after the date of such entry, enrollment, or induction into service.

"In Witness Whereof, I have hereunto set my hand and caused the seal of the United States of America to be affixed.

"Done at the City of Washington this 24th day of December, in the year of our Lord nineteen hundred and forty-five, and of the Independence of the United States of America the one hundred and seventieth.

"[Seal]                    Harry S. Truman

"By the President:

"Dean Acheson

*"Acting Secretary of State."*

FAHY, Circuit Judge, concurring in part and dissenting in part.

I concur that the appeal was timely and that this court has jurisdiction. I dissent from the court's approval of the use by the Government of defendant's former conviction of an offense for which he had been granted a full pardon by the President. The conviction was used for the purpose of impeaching defendant's credibility as a witness in his own behalf. To permit the pardoned crime thus to be used on a trial for an entirely different offense seems to me to be inconsistent with the nature and effect of a full Presidential pardon as described in Supreme Court cases, though the precise question before us has not been decided by that Court.

There is involved the exercise of one of the few powers of the President specifically set forth in the Constitution, as follows:

"\* \* \* he shall have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." (U.S.Const. Art. II, § 2.)

In commenting upon this provision in United States v. Wilson, 1833, 7 Pet. 150, 32 U.S. 150, 8 L.Ed. 640, Chief Justice Marshall said:

"\* \* \* As this power had been exercised, from time immemorial, by the executive of that nation whose language is our language, and to whose judicial institutions ours bear a close resemblance; we adopt their principles respecting the operation and effect of a pardon, and look into their books for the rules prescribing the manner in which it is to be used by the person who would avail himself of it." (7 Pet. at page 160, 32 U.S. at page 160.) Only a procedural question was there decided, having to do with the method of bringing a pardon before the Court. The opinion points out, however, that a pardon "may be absolute or conditional."

The one now before us states in its operative part that it is "a full pardon." There is a recital clause that the persons referred to ought to have restored to them the "political, civil, and other rights of which they were deprived by reason of such conviction and which may not be restored to them unless they are pardoned"; but this motivation is not a limitation upon the legal effect of the "full pardon" granted. Accordingly, any limitations we now attach apply to the exercise to its fullest extent of the constitutional power itself. The sweeping consequences of such exercise are described by the Supreme Court in Ex parte Garland, 1866, 4 Wall. 333, 71 U.S. 333, 18 L.Ed. 366, and other cases, to accord with the benign nature of this prerogative of the President. In Ex parte Garland [1] Congress by statute had prohibited anyone from being admitted as an attorney to the bar of the courts of the United States unless he should swear he had never voluntarily borne arms against the United States, or, *inter alia,* supported any authority within the United States hostile thereto. A Presidential pardon of such activities had been granted to Mr. Garland. The Court held the act of Congress to be unconstitutional and said this view was strengthened by a consideration "of the effect of the pardon" and "the nature of the pardoning power of the President," which it described in part as follows:

"\* \* \* This power of the President is not subject to legislative control. Congress can neither limit the effect of his pardon, nor exclude from its exercise any class of offenders. The benign prerogative of mercy reposed in him cannot be fettered by any legislative restrictions.[2]

"Such being the case, the inquiry arises as to the effect and operation of a pardon, and on this point all the authorities concur. A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity." (4 Wall. at pages 380–381, 71 U.S. at pages 380–381, 18 L.Ed. 366.)

This broad approach has several times been emphasized by the Supreme Court, in United States v. Klein, 1871, 13 Wall. 128, 80 U.S. 128, 20 L.Ed. 519; Osborn v. United States, 1875, 91 U.S. 474, 23 L.Ed. 388;

---

1. Elaborate historical and analytical arguments appear in the Report, including those of Mr. Reverdy Johnson for the petitioner and of Mr. Stanbery, special counsel of the United States. See, particularly, 4 Wall. 342, 349–350, 71 U.S. 342, 349–350, 18 L.Ed. 366.

2. This is ample to dispose of any contention based upon § 14–305, D.C.Code (1940). That provision should not in any event be construed as intended to limit the effect of a Presidential pardon. Rather, it deals with the general evidentiary rule alone. See, also, United States v. Klein, infra, 13 Wall. at pages 147–148, 21 L.Ed. 426.

Boyd v. United States, 1892, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077; Young v. United States, 1877, 97 U.S. 39, 24 L.Ed. 992; and see Ex parte Wells, 1855, 18 How. 307, 315, 59 U.S. 307, 315, 15 L.Ed. 421. If it be thought that in Ex parte Garland and other cases decided against the background of the War between the Sections[3] the Court sought to ameliorate the stresses consequent upon the conflict, the truth is the scope accorded the pardoning power in both the decisions and language of the Court was deemed required by the nature of the power apart from the immediate occasion for its exercise. That this nature found congenial application in no way detracts from its permeating and benign quality then or now, from which we should not detract. "Pardon includes amnesty. It blots out the offence pardoned and removes all its penal consequences." United States v. Klein, 13 Wall. at page 147, 80 U.S. at page 147, 20 L.Ed. 519. In Carlisle v. United States, 1872, 16 Wall. 147, 153, 83 U.S. 147, 153, 21 L.Ed. 426, the power is again described as "that benign prerogative of mercy." Reference is also made to it, "in the language of the cases," as "effacing the offence, blotting it out," "as though it had never existed." (Carlisle v. United States, supra, 16 Wall. at page 153, 21 L.Ed. 426.) In Osborn v. United States, 91 U.S. at page 477, 23 L.Ed. 388, it is said the pardon obliterates the offense in legal contemplation.

More than a century before the adoption of the Constitution the Lord Chief Justice of England, in 1679, in Reading's Trial, 7 Howell's State Trials 259, 296, had said: " * * * if he hath his pardon, it doth take away as well all calumny as liableness to punishment, and sets him right against all objection. So, you know, after an act of general pardon, it is a scandal to reproach a man for that which he is thereby pardoned for. * * * *" Blackstone (4 Comm. 402) had stated that the effect of the pardon is to give a new credit and capacity, language which the Supreme Court repeated in Ex parte Garland. Accordingly it cannot be said there was a common law rule requiring the constitutional provision to be construed to limit the effect of a full pardon as the court now does.

The President in any given case may grant the pardon in limited or conditional terms (Ex parte Wells, supra; United States v. Wilson, supra; United States v. Klein, supra, 13 Wall. at page 147, 20 L.Ed. 519; see, also, 18 U.S.C. § 3570). It may be made specific as to effect; for example, to restore civil rights, or to remit fines or other penalties. The one before us is not of that character. It is "full." In these circumstances we cannot speculate the President intended less than the law attaches to a full Presidential pardon. Further, were we to speculate as to a specific intent we should prefer to think the President intended the broad effect described in Supreme Court cases rather than the narrower content given, for example, in 22 Ops.Att'y Gen. 36 (1898). In any event, action taken by the President pursuant to an express constitutional provision is not to be limited by a prior construction of the exercise of the power which might be found to be erroneous.

The views ably set forth in the opinions of Judge Kirkland, U. S. v. Richards, D.C., 1950, 91 F.Supp. 323, in the court below, and of Judge Washington for this court, rest primarily upon the circumstance that the pardon does not erase the fact that the former crime was committed. The conviction, it is said, being evidence of untrustworthiness inherent in the commission of the crime, remains evidence of such untrustworthiness notwithstanding the pardon. See Williston, Does A Pardon Blot Out Guilt?, 28 Harv.L.Rev. 647 (1915). This distinguished author and teacher denies that the pardon serves to blot out guilt or "improves a man's character." Therefore, it is said, the conviction remains evidence against credibility. But the question is not whether the pardon literally erases the fact that the crime was committed or whether it necessarily improves the character of the recipient, though it well might do the latter. The question rather concerns the use which

---

**3.** Ex parte Wells, supra, it will be noted, was decided prior to the War.

can be made of the conviction after the President has pardoned the crime. There is no dispute it can no longer be used against a person's competency to be a witness. Boyd v. United States, 1892, 142 U.S. 450, 453, 12 S.Ct. 292, 35 L.Ed. 1077. This is so though the pardoned crime remains a fact. That fact is simply no longer available as a bar to competency. The policy of the law attaches this effect to the pardon. The related effect with respect to credibility is, paradoxically, retained. The reason must be that while dishonesty is assumed to be erased by the pardon sufficiently to restore competency as a witness, yet it is not sufficiently erased as evidence of dishonesty in testifying. This draws too fine a line to support a distinction which I can accept in the light of the generous lines drawn by the Supreme Court in delineating the nature and quality of a full Presidential pardon. If in the eyes of the law (Ex parte Garland, supra) the pardon serves to blot out the crime, and, as all authorities agree, restores competency as a witness, the old offense should no longer be available in the administration of the criminal law to impeach credibility.[4]

There are indeed cases, such as Baum v. Clause, 1843, 5 Hill, N.Y., 196, and others, relied upon by the majority, where it is said "the crime still goes to the credit of the witness." Yet in the same case the New York court refers to the view of Blackstone that the effect of the pardon is to give a "new credit" as well as a new capacity. 4 Comm. 402. See, also, the references to Bacon, at 5 Hill 198. In Curtis v. Cochran, 1870, 50 N.H. 242, also cited by the majority, it is said "A person convicted of an offence known in law as infamous, is incapacitated to be a witness, because, when his guilt is established by the conviction, his general character for truth is shown to be so bad that his testimony would be useless or dangerous," citing Greenleaf and Starkie. (50 N.H. at pages 244–245.) The court proceeded to hold that though a pardon removes this disability, presumably because dishonesty can no longer be assumed, nevertheless the conviction is still available to attack honesty. Of course the question of credit remains for the jury; but it does not follow that after the pardon the former conviction should remain one of the factors which otherwise might be considered by the jury on that question.

The statement in In re Spenser, C.C.D. Or., 1878, 22 Fed.Cas. pages 921, 922, No. 13,234, that "The effect of the pardon is prospective and not retrospective" does not aid the majority. The trial under review was subsequent to the pardon. Only a prospective effect is claimed for the action of the President, namely, denial of use of the pardoned crime in a subsequent trial for a different crime. Furthermore, if, as the majority quotation from In re Spenser also states, "The offender is purged of his guilt, and thenceforth he is an innocent man," it is hard to follow the reasoning that because the past "is not obliterated" and "the fact that he had committed the crime" is not wiped out, the guilt which the court says is purged may yet be treated as not purged and the innocence resulting from the pardon may yet be used as though it were guilt.

Some additional comment upon authorities cited by the majority might be useful. I read Rookwood's Case, Holt 683, 685, 90 Eng. Reprint 1278 (1696), as actually holding only that competency was restored by a pardon, the only question there before the court, and as to which all authorities agree. It seems to me, further, that United States v. Jones, 1824, Fed.Cas. No. 15493, 2 Wheeler Crim.Cas., N.Y., 451, dealt with what the court construed to be a pardon

---

4. Professor Weihofen (The Effect of A Pardon, 88 U. of Pa.L.Rev. 177 (1939) ) is quoted in the majority opinion in part as follows: "The damage to his credibility * * * is not a legal consequence of the conviction; the conviction is merely evidence that he is untrustworthy, a fact not wiped out by the pardon." One wonders, then, why the pardon restores competence as a witness (in those jurisdictions where a conviction constitutes a barrier to such competence). The basis for disqualification as a witness, of which a conviction is said to be only evidence, remains, according to this reasoning, notwithstanding the pardon.

granted only for the purpose of enabling an important witness to testify. The statement of the court that the credibility of the witness was nevertheless for the jury should be read in that context. It is true also of Commonwealth v. Green, 1822, 17 Mass. 515, that the court said the pardon had been granted by the executive "for the sole purpose of rendering him a competent witness." In Bennett v. State, 1887, 24 Tex.App. 73, 5 S.W. 527, the cases of Curtis v. Cochran and Baum v. Clause, both supra, and the authorities arrayed in those cases, are relied upon.[5] In the Bennett case appears again the distinction which I think should not be drawn. While credibility is for the jury the use of the pardoned crime on that question should be barred, as it is on the kindred question of competency to testify. The Texas court acknowledges that the general effect is "that a full pardon absolves the party from all legal consequences of his crime. It makes the offender a new man. It blots out his offense, and gives him a new credit and capacity; and even so far extinguishes his guilt as that, in the eye of the law, the offender is as innocent as if he had never committed the offense." (5 S.W. at page 529.) The actual holding in Territory v. Chavez, 1896, 8 N.M. 528, 45 P. 1107, is only that a pardon restores a witness' competency, although Curtis v. Cochran, supra, is quoted on the question of credibility as well. Martin v. Commonwealth, 1904, 78 S.W. 1104, 25 Ky.Law.Rep.1928, is quite ambiguous on the present question. The nature of the pardon is not shown. A former conviction of grand larceny had been introduced by the defendant to impeach the credibility of a dying declaration, not the testimony of the accused. The report of the case states merely: "The commonwealth then introduced and had read a pardon to the deceased for this crime. The court should not have permitted this pardon to have been introduced as evidence." (78 S.W. at page 1105, 25 Ky.Law Rep. at page

1930.) In Bryant v. United States, 5 Cir., 1919, 257 F. 378, 383, the only question decided was that a pardon is admissible "in rebuttal of the evidence" of a conviction which had been used to impeach a witness. In People v. Hardwick, 1928, 204 Cal. 582, 269 P. 427, 59 A.L.R. 1480, the court follows the rule in the states, as set forth by the majority herein, but expressed grave doubt as to its soundness, in permitting one who had been convicted to be confronted with the record of his conviction, although pardoned. (269 P. at page 432.) Wallamet R. T. Co. v. Oregon S. N. Co., D. C.Or., 1876, 29 Fed.Cas. pages 88, 90, No. 17,106, was a civil suit between private concerns. It holds that a pardon in general does not restore credit: "A pardon does not profess to be a reversal of the judgment of conviction, but only a relief from the punishment imposed by it," a view quite inconsistent with Ex parte Garland, where the punishment, or disqualification sought to be erected, was not that imposed by the judgment of conviction. Vedin v. McConnell, 9 Cir., 1927, 22 F.2d 753, was an action in ejectment between private parties. Evidence of plaintiff's conviction for perjury was offered. It should be noted that a former conviction for perjury might place the matter upon a different footing. Williston, supra, p. 653.

In Carlesi v. People of State of New York, 1914, 233 U.S. 51, 34 S.Ct. 576, 58 L. Ed. 843, quoted in the majority opinion, the Supreme Court carefully avoided impinging upon its earlier decisions to which I have referred, saying,

" * * * The issue is a narrow one and involves not the determination of the operation and effect of a pardon within the jurisdiction of the sovereignty granting it, but simply requires it to be decided how far a pardon granted as to an offense committed against the United States operates so to speak extra-territorially as a limitation upon the States ex-

5. "* * * And although a pardon cannot convert a wicked man into an honest one, and confer credibility upon one who through the infamy of his conduct is not credible, yet such a pardon must be presumed to have been conferred after in-

quiry, upon good and sufficient ground, on an object worthy of the indulgence, and therefore worthy of being heard; but the degree of credit is still to be left to the jury." (5 S.W. at page 529.)

cluding them from considering the conviction of a prior and pardoned offense against the United States in a prosecution for a subsequent state offense. * * *" (233 U.S. at page 57, 34 S.Ct. at page 577.)

In holding that the state of New York acted validly within its sovereignty, the Court said that it was "Determining * * * only the case before us."

The weight which flows from the authorities relied upon by the majority I think is counterbalanced by the very nature of a full, unconditional and unlimited pardon. The fact that a conviction can be said to be material on the question of credibility, notwithstanding a pardon, is not decisive. Evidence is not necessarily admissible because material. A communication of client to counsel might be very material and relevant. But the policy of the law forbids its use. Numerous other illustrations might be given. So the policy of the law should bar the use for impeachment purposes of a fully pardoned Federal offense in a subsequent trial by the United States for a different offense. To permit the hand which has bestowed the forgiveness, Ex parte Wells, supra, to bring forth the offense forgiven as a reproach to the one forgiven, in the administration of the criminal laws, is inconsistent with the act of forgiveness and unnecessarily detracts from the benign and merciful nature of a full Presidential pardon. What third party, Ex parte Garland, supra, 4 Wall. at page 381, 18 L.Ed. 366, or other uses of the former conviction might be made we need not now decide.

The views herein set forth are not met by the admission in evidence of the pardon after evidence of the conviction has been admitted. If the pardon is admissible it is because it takes from the Government the right it otherwise would have to use the conviction to impeach credibility. Once the conviction, however, has been admitted, as in the case at bar, notwithstanding the pardon, the efficacy of the latter with respect to the question of credibility would seem to have been adversely decided so as to render the pardon immaterial on that question.

I would reverse and remand.