Ronald David WATKINS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 51551, 51552.

Court of Criminal Appeals of Texas, Panel No. 3.

Sept. 20, 1978.

Rehearing En Banc Denied Nov. 1, 1978.

Melvyn Carson Bruder, Dallas, for appellant.

Henry Wade, Dist. Atty., John H. Hagler, Richard Worthy and Gerald A. Banks, Asst. Dist. Attys., Dallas, for the State.

Before DOUGLAS, ROBERTS and DAL-LY, JJ., and KEITH, Commissioner.

## OPINION

KEITH, Commissioner.

Appellant was indicted in two cases of felony theft and waived his right to be tried separately on the individual cases and they were tried before the same jury. Appellant pleaded not guilty but was found guilty in each instance; his punishment was fixed by the jury at confinement for ten years in each case.[1]

Appellant does not challenge the sufficiency of the evidence and we simply note that appellant received money from the complaining witnesses as an investment in a company he purportedly was organizing. The company failed and the complainants lost their money. It was the State's theory that the entire transaction was a fraudulent scheme devised by appellant whereby he would induce the individuals to part with their money when he had no intention of operating the company but planned to

---

1. Appellant was represented by retained counsel at the trial and there is no suggestion of indigency found in our record. While his retained counsel gave notice of appeal, the record reached this Court without any brief having been filed and we affirmed by a per curiam opinion. On rehearing timely filed by newly retained counsel, it was made known that appellant had been misled by his first lawyer and had no knowledge that a brief had not been filed in his behalf.

On March 31, 1976, by a per curiam order, we abated the appeal and directed the trial court to conduct an evidentiary hearing to determine if the failure of counsel to file appellate briefs was with the knowledge or consent of the appellant under the rationale of *Steel v. State*, 453 S.W.2d 486, 488 (Tex.Cr.App.1970).

The trial court held such a hearing and determined that the failure to file the appellate brief was without the knowledge or consent of the appellant. The record contains ample support of the trial court's findings and the appeal is now properly before us for consideration. The appeal is reinstated.

The delay incident to the disposition of this appeal is not as serious as it might have been—appellant having been at large on bail at all times since the return of the indictment.

"skim off" the investments for his own use and then bankrupt the company.

Defendant contended that he had a legitimate intention to operate the business but a lack of financing caused it to fail. The jury accepted the State's view of the evidence.

The first five grounds of error presented relate to the use of two prior convictions of the defendant in the federal courts against him (a) to impeach him as a witness in his own behalf at the guilt/innocence phase of the trial, (b) as evidence of his prior criminal record, and (c) to deny him probation.

█ In his first ground of error, appellant contends that the trial court erred in admitting evidence of his conviction in 1961 and 1966 in the federal courts because he had received a full presidential pardon for such offenses. He does not even hint that he received the presidential pardon because of subsequent proof of his innocence.[2]

Appellant's counsel, citing U.S. Constitution, art. II, § 2, and a series of cases, most of which came in the aftermath of the Civil War,[3] asserts that "when the President grants a full, unconditional pardon the punishment is released and the guilt is blotted out."

We do not find any of the cases cited to be in point or dispositive of the questions presented on this appeal. Rather, we turn to the only case on the subject from the United States Supreme Court which has come to our attention, *Carlesi v. New York,* 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843 (1914). The Court held that, notwithstanding a full presidential pardon, a prior federal conviction can be used as an enhancement count in a state prosecution. We also note this language found in *Gurleski v. United States,* 405 F.2d 253, 266 (5th Cir. 1968):

"A pardon for any other reason than subsequent proof of innocence does not obliterate the defendant's previous transgressions particularly as they may bear on his present character and veracity."

Finally we turn to *Jones v. State,* 141 Tex.Cr.R. 70, 147 S.W.2d 508, 510–511 (1941), wherein this Court discussed *Carlesi,* supra, and *Ex parte Garland,* 71 U.S. 333, 18 L.Ed. 366 (1867), overruled all prior decisions, and held that the Governor's pardon forgives only the penalty, "but he has no power to direct that the courts shall forget either the crime or the conviction.[4]

Just last year when the question was again presented, we said in *Ex parte Smith,* 548 S.W.2d 410, 414 (Tex.Cr.App.1977), following *Jones,* supra:

"[A] pardon for any reason other than subsequent proof of innocence does not obliterate the defendant's conviction. Rather, it merely serves to restore his

---

**2.** Appellant testified that he went to work for the Federal Bureau of Narcotics and Dangerous Drugs as an undercover investigator and traveled internationally in their behalf for a year and a half. The testimony of his probation officer (Long) corroborated, to some extent, appellant's version of the undercover activities.

**3.** Appellant cites these cases: (1) *Ex parte Garland,* 71 U.S. 333, 18 L.Ed. 366, 371 (1867), which does contain the phrase "blots out of existence the guilt", but we observe that the rationale of this case, involving a lawyer's right to practice, actually turns upon the construction of the constitutional prohibition against ex post facto laws. (2) *Boyd v. United States,* 142 U.S. 450, 454, 12 S.Ct. 292, 294, 35 L.Ed. 1077, 1078 (1892), wherein it was held that the pardon "obliterated" the common law disability to testify after being convicted of a felony. This was a federal conviction and the testimony was in the federal court. (3) *Young v. United States,* 97 U.S. 39, 24 L.Ed. 992, 999 (1878),

involved a British subject who, having never been guilty of treason, was not within the group who received the general amnesty and pardon; hence he was not allowed to recover his confiscated cotton. (4) *United States v. Klein,* 80 U.S. 128, 20 L.Ed. 519 (1872), holding that Congress lacks constitutional authority to limit the effect of a presidential pardon. (5) *Ex parte Wells,* 59 U.S. 307, 15 L.Ed. 421 (1856), upholding the validity of a conditional presidential pardon. And (6) *Schick v. Reed,* 419 U.S. 256, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974), which explained and then followed *Ex parte Wells,* supra.

**4.** Appellant also cites *Donald v. Jones,* 445 F.2d 601 (5th Cir. 1971), which in turn cites *Jones v. State,* supra, for the statement: "[T]he pardon does not vitiate the effect of defendant's felony conviction for the purpose of enhancement"; and which contains the quotation from *Gurleski,* supra. (445 F.2d at 606)

civil rights. See also *Gurleski v. United States,* 405 F.2d 253 (5th Cir. 1968)."

Appellant's first contention is overruled.

■ In his second ground of error, appellant contends that the trial court erred in permitting State's counsel to use the prior federal convictions to impeach appellant as a witness in his own behalf at the guilt/innocence phase of the trial. Again, we disagree; and, in addition to the authorities cited earlier, we note that such a contention has long been denied in this State. As was said in *Bustillos v. State,* 464 S.W.2d 118, 119 (Tex.Cr.App.1971):

"Since the early case of *Lights v. State,* [21 Tex.App. 308,] 17 S.W. 428 (1886—Court of Appeals), the rule was established that the credibility of a witness in a criminal case could be attacked by a showing that he had been convicted of a crime."

See also the Texas cases cited in Annotation: "Witness—Impeachment—Effect of Pardon," 30 A.L.R.2d 893 (1953);[5] and 2 Wharton's Criminal Evidence § 476, at 438 (13th Ed., Torcia, 1972), wherein this language is used: "A witness' prior conviction of a crime may be shown for the purpose of impeaching his credibility, even though he had been granted a pardon therefor."

Appellant's second ground, reflecting no error, is overruled.

■ In his third ground of error appellant contends that the trial court erred in permitting State's counsel to cross-examine appellant about his prior conviction in 1961 because it was unrelated to the case on trial and was too remote in point of time to be admissible.

It was shown that appellant's first conviction was in Oklahoma on February 28, 1961, and he was sentenced to two years' imprisonment. The State showed that he entered prison at Seagoville on April 3, 1961; that his second conviction in Alabama was on June 20, 1966, and he was given a five-year probated sentence and ordered to make restitution in the amount of $5,000.[6] The indictments in the cases at bar charge that the offenses were committed on September 1 and September 19, 1973, respectively. The trial began on December 16, 1974.

Appellant argues that it being conclusively shown that he was released from confinement on April 3, 1963, more than ten years prior to the date of the alleged offenses now under consideration, the 1961 Oklahoma conviction was too remote. He cites and relies upon *Livingston v. State,* 421 S.W.2d 108 (Tex.Cr.App.1967). Appellant's reading of *Livingston* is overly broad. Indeed, after including *Livingston* in the list of authorities relied upon in *McClendon v. State,* 509 S.W.2d 851, 855 (Tex.Cr.App. 1974), the Court noted that "the often referred to ten-year rule of thumb is not always followed. Each case must rest on its own circumstances."

More recently, in *Davis v. State,* 545 S.W.2d 147, 150 (Tex.Cr.App.1976), this statement of the rule was laid down:

"The question of remoteness of prior convictions is addressed largely to the discretion of the trial court. *Bustillos v. State,* Tex.Cr.App., 464 S.W.2d 118. The

---

5. The A.L.R. Annotation is based upon the reported case of *Richards v. United States,* 89 U.S.App.D.C. 354, 192 F.2d 602 (1951), which involved a presidential pardon. The *Richards* Court followed the ancient rule that "an offender, if pardoned, must still face the fact that his conviction is admissible in evidence as bearing on his credibility." (89 U.S.App.D.C. at 358, 192 F.2d at 606, 30 A.L.R.2d at 885)

6. All the facts stated in this paragraph, except the date he entered prison are shown by an official document, appellant's Exhibit 1, the presidential pardon dated December 20, 1972. This pardon included an attachment reciting the details of his Oklahoma conviction in 1961, wherein he was sentenced to two years' imprisonment and recited that he "satisfactorily served the aforesaid sentence."

The attachment then recited appellant's conviction in Alabama on June 20, 1966, after having been indicted for "violation of Section 1343, Title 18, United States Code" (Fraud by Wire, Radio, or Television), and was placed on probation for five years and ordered to make restitution in the amount of $5,000. A further recitation was to the effect that he made the restitution as ordered and the probation terminated on May 12, 1969.

tendency has been to uphold admission of a prior conviction if the period of time between release from prison and trial is less than 10 years. *Penix v. State,* Tex. Cr.App., 488 S.W.2d 86. However, the interval of time is not in itself the controlling factor and the facts of each case must determine if a prior conviction is too remote. *Dillard v. State,* 153 Tex.Cr. 134, 218 S.W.2d 476."

*McClendon,* supra, was cited and followed in *Milligan v. State,* 554 S.W.2d 192, 196 (Tex.Cr.App.1977), wherein this additional statement from *McClendon* was quoted:

" 'If more than ten years have elapsed since the discharge date of a prior conviction and if the witness has not reformed, proof of such prior conviction may be shown for impeachment purposes.' "

See also Annotation: "Impeachment of Accused—Remote Offenses," 67 A.L.R.3d 824 (1975), where dozens of Texas cases are considered in connection with this multifaceted subject.

There being evidence showing a lack of reformation and the subsequent conviction of another felony, the 1961 conviction is not deemed subject to the objection of remoteness. *Gill v. State,* 147 Tex.Cr.R. 392, 181 S.W.2d 276, 277 (1944); *Crisp v. State,* 470 S.W.2d 58, 59 (Tex.Cr.App.1971). The third ground of error is overruled.

■ In his fourth complaint appellant claims it was error to permit the State to adduce details of appellant's prior conviction in 1966. At the punishment stage of the proceedings appellant's federal probation officer was called as a witness, identified appellant as the person who was under his jurisdiction for defrauding the First National Bank of Birmingham, Alabama, the conviction being dated June 20, 1966, with appellant being placed upon probation for five years. Appellant made no objection to such proof.

Later, after appellant's counsel had examined Long in detail adducing proof of appellant's work in trying to suppress the drug traffic (see footnote 2, supra), State's counsel went over the same ground again, but this time was met with this objection:

"[DEFENDANT'S COUNSEL]: Your Honor, I would object to going into the details of the offense, *I think it's in evidence before the jury.* [Emphasis supplied]

"THE COURT: Overruled."

In the first place, we disagree with present counsel: the State did not go into the details of the offense; instead, it went into the details of the terms of the probation and was seeking to establish whether or not appellant had made the restitution provided therein.

Secondly, as stated by appellant's counsel, the evidence had already been placed before the jury without objection and the objection should have been that it was repetitious.

Finally, we do not find that the present complaint corresponds with the objection lodged in the trial court. We invoke the universally applied rule: Grounds of error on appeal must comport with objections by counsel at trial. *Shannon v. State,* 567 S.W.2d 510, 514 (Tex.Cr.App.1978); *Milligan v. State,* supra, 554 S.W.2d at 195. Nothing is presented for review.

■ The fifth ground of error attacks the court's action in refusing to submit to the jury the question of appellant's right to receive a probated sentence. He argues that the unlimited presidential pardon discussed earlier precluded the State's use of the pardoned convictions in bar of his right to receive a probated sentence. We disagree. As a matter of law, appellant was not entitled to probation. *Baker v. State,* 519 S.W.2d 437, 438 (Tex.Cr.App.1975); *Cherry v. State,* 502 S.W.2d 9, 12 (Tex.Cr. App.1973).

■ Finally, appellant complains that the State introduced evidence of extraneous offenses at the guilt/innocence stage of the trial through the cross-examination of a bank employee, Roy B. Rush. State's counsel did examine Rush concerning some returned or "insufficient" checks and appellant's complaint to the trial court was expressed in these words: "Your Honor, again he's inferring that there's another criminal

violation here and move for a mistrial." This generalized complaint, which did not ask that the jury be instructed to disregard the objectionable question, was overruled.

Generally, "[i]t has been held that testimony referring to or implying extraneous offenses allegedly committed by the defendant is rendered harmless by the trial court's instruction to disregard." *Evans v. State*, 542 S.W.2d 139, 141 (Tex.Cr.App. 1976). The trial court did precisely that a few questions later, except as to the $7,000 check mentioned in footnote 7, infra. The court's instruction to the jury to disregard cured the error, if any there was under the record as it then existed. *Ashley v. State*, 527 S.W.2d 302, 306 (Tex.Cr.App.1975). We find no error in the court's refusal to declare a mistrial.

Finally, the fact that appellant had written "hot" checks permeates our entire record. We set out in the margin only two of such instances, noting that no objections were made in either instance.[7] The testimony which came from Rush told the jury only that which they had already heard from appellant's own mouth—and without objection. This statement of the general rule is taken from *Watson v. State*, 532 S.W.2d 619, 624 (Tex.Cr.App.1976):

"It has long been the rule that improper admission of evidence does not constitute reversible error if the same facts were shown by facts to which no objection was addressed."

Finding no reversible error, the judgment of the trial court is affirmed.

Opinion approved by the panel.

---

7. See, e. g., appellant at 509, upon cross-examination:
    "A. I don't know that I ever gave them anything except a check.
    "Q. And did that check clear the first time through?
    "A. Now that I don't know, either. I know I wound up paying them the money. Now, whether the check cleared the first time through or not, I don't remember, I don't know."
    Another instance (at page 531), with appellant still undergoing cross-examination:
    "Q. What about the $7,000.00 deposit? [sic: check]

---

"A. I know where that one came from.
"Q. You were not on the signature card, were you?
"A. No, I wasn't.
"Q. What were you doing writing that check?
"A. We had applied for a signature card that day.
"Q. You weren't authorized to write on that, were you?
"A. Well, I would when I got the signature card."